United States Court of Appeals,

Fifth Circuit.

Nos. 96-20122, 96-20191.

Shirley BRADY, Plaintiff—Appellee-Cross-Appellant,

v.

HOUSTON INDEPENDENT SCHOOL DISTRICT;  Ernie Carney;  Faye Bryant,
Defendants—Appellees,

Thomas Cortese;  Brent Mahaffey;  Steve Sokol,
Defendants—Appellants-Cross-Appellees.

Shirley BRADY, Plaintiff-Appellee,

v.

HOUSTON INDEPENDENT SCHOOL DISTRICT, et al., Defendants,

Thomas Cortese;  Brent Mahaffey;  Steve Sokol, Defendants-
Appellants.

June 11, 1997.

Appeals from the United States District Court for the Southern
District of Texas.

Before DAVIS, SMITH and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

In March 1994, Shirley Brady sued the Houston Independent
School District ("HISD"), four HISD employees (Thomas Cortese,
Brent Mahaffey, Steve Sokol, and Faye Bryant), and Ernie Carney, an
outside computer consultant employed by HISD on an hourly basis.
Brady alleged numerous federal and state claims relating to her
reassignment from her position as systems programmer to a position
of significantly reduced responsibilities.  The district court
dismissed many of these claims both pre- and post-trial, and Brady
prevailed only on her First Amendment retaliation claim against

1

three of the HISD employees (Cortese, Mahaffey, and Sokol), securing a jury verdict of $546,200 in compensatory and punitive damages. The three employees (collectively, the "Appellants"[1]) unsuccessfully moved to set aside the verdict as a matter of law, and they now appeal. Brady cross-appeals, contending that the district court erred by dismissing her other claims.

We believe that the evidence is insufficient to support the jury verdict on Brady's First Amendment claim. We therefore reverse and render judgment for the Appellants, and accordingly also vacate the order granting attorney's fees to Brady. Because we conclude that the issues raised by Brady's cross-appeal are without merit, we affirm the district court's dismissal of her various other claims.

I

This lawsuit concerns two significant incidents in the recent history of HISD's data processing department. The first occurred in the fall of 1991, when Shirley Brady testified before HISD investigators about certain inappropriate activities on the part of Ernie Carney and Alexander Winkler. The second transpired in early 1993, when HISD divested Brady of her duties as systems programmer following a computer breakdown and then outsourced these duties to a computer consulting firm that employed Carney. The central question is whether the Appellants dispossessed Brady of her systems-programmer responsibilities in early 1993 in retaliation

---

[1]Cortese, Mahaffey, and Sokol are actually both the Appellants and Cross-Appellees, but for the sake of brevity, we refer to them collectively as the Appellants.

for her protected statements made to HISD investigators in late 1991.  Before turning to this issue, we first provide a more detailed summary of the facts and procedural history of the litigation.

A

In 1984, Shirley Brady was hired by HISD as systems programmer for the data processing department.  Because of the heavy demands of Brady's job, however, HISD frequently contracted with outside computer consultants on an hourly basis to assist Brady with her duties.  The most frequently used consultant was Ernie Carney, and from approximately 1984 through 1991, Brady and Carney worked together in the data processing department.

In August 1991, a local television station aired an exposé revealing improprieties in HISD's data processing department.  As a result of this program, HISD conducted an internal investigation of the department, interviewing every member of that department, including Brady and Appellants Brent Mahaffey and Steve Sokol. Brady disclosed to investigators that Carney had confided in her that he and Alexander Winkler, who at the time was the assistant superintendent in charge of the data processing department, had engaged in wrongdoing.  According to Brady, Carney had lent money to Winkler;  when Winkler was unable to repay the loan, Carney confronted him and, in exchange for forgiveness of this loan, demanded to be given a higher hourly wage and to be paid for hours not actually worked.  Winkler apparently acceded to these demands.

Following the internal investigation, Winkler resigned under

3

pressure from HISD's Board of Trustees, and HISD ceased employing Carney as an hourly consultant. Appellant Thomas Cortese replaced Winkler as the assistant superintendent in charge of data processing. Brady remained in her job as systems programmer, continuing to receive positive employment evaluations.

During the 1992 Christmas break, Brady "converted" HISD's old computer operating system to a newer one. Although the conversion was completed over the break, the financial programs were inoperative when HISD employees returned to work after the holiday. Faye Bryant, the deputy superintendent for district planning, soon learned of the problem, and she pressured Cortese, who in turn looked to Brady, to fix the problem immediately.[2] Brady determined that she needed outside help, and asked Cortese to rehire Ernie Carney. After Cortese approved the request, HISD rehired Carney as a consultant on an hourly basis. The problems with the financial programs were soon fixed, although the parties dispute whether the solution was due to the efforts of Carney or Brady.

Shortly thereafter, HISD administrators (including Bryant, Cortese, Mahaffey, and Sokol) decided to outsource the systems-programmer duties to Operating Systems, Inc. ("OSI"), a computer consulting firm run by Mike Cox that employed Carney as a consultant. As part of the negotiations between HISD and OSI, Carney and Cox informed HISD that they could not guarantee OSI's

---

[2]The chain-of-command, from most senior to least, is as follows: Bryant, Cortese, Mahaffey/Sokol, and Brady. Unlike the other three administrators, Sokol was not Brady's direct supervisor, but his position was roughly equivalent in seniority to that of Mahaffey.

performance unless OSI consultants had exclusive access to HISD's computer system. Pursuant to these discussions, Mahaffey, upon the direction of Cortese, restricted Brady's access to the system. Because Brady's responsibilities as systems programmer had been outsourced to OSI, Mahaffey and Cortese recommended eliminating her position as of September 1, 1993, the beginning of the next fiscal year.

Concerned about the loss of her job duties, Brady filed a grievance with HISD in August 1993. HISD never formally acted upon Brady's grievance, nor did it eliminate her job in September 1993. Although Brady never again performed the duties of a systems programmer, she held that position, in name only, until three weeks before the July 1995 trial date, when she was reassigned to another job within HISD.[3]

B

In March 1994, Brady sued Carney, HISD, and four HISD employees (Cortese, Mahaffey, Sokol, and Bryant). She raised the following claims: (1) retaliation for her exercise of protected speech, in violation of the First Amendment; (2) violation of her right to due process under the Fourteenth Amendment; (3) conspiracy to deprive her of her right to speak, in violation of 42 U.S.C. § 1983; (4) violation of the Texas Whistleblower Act; (5) intentional infliction of emotional distress; and (6) tortious interference with a business relationship. At summary judgment,

---

[3]Although Brady remained the titular systems programmer and did not suffer any loss of pay, she won damages for mental anguish and diminished ability to obtain employment.

the district court dismissed all of Brady's claims except: (1) the First Amendment claim against the four HISD employees; (2) the § 1983 claim against the four HISD employees and Carney; and (3) the intentional infliction of emotional distress claim against Carney. The case went to trial, and the jury returned a verdict for Brady on each of the three claims against three of the HISD employees (Cortese, Mahaffey, and Sokol) and Carney.[4] The district court thereafter directed a verdict for Carney and the HISD employees on the latter two claims, leaving intact only the verdict on the First Amendment claim against Cortese, Mahaffey, and Sokol. The court then awarded Brady $87,930 in attorney's fees against the three.

Cortese, Mahaffey, and Sokol appeal the district court's order refusing to set aside the jury verdict on the First Amendment claim. Brady cross-appeals, alleging that the court erred by dismissing her other federal and state claims. In addition, both parties appeal the award of attorney's fees.

II

The primary issue raised by Cortese, Mahaffey, and Sokol is whether the evidence is sufficient to support the jury's determination that they retaliated against Brady in 1993 for her exercise of protected speech in 1991. Because we agree with the Appellants that Brady has presented insufficient evidence to sustain the jury verdict, we reverse the district court's order denying the Appellants' motion for judgment as a matter of law, and

_____

[4]The jury actually awarded Brady punitive, but not compensatory, damages against Bryant. The parties agreed that these damages should be set aside.

6

render judgment for the Appellants.

A

When reviewing a district court's denial of a motion for judgment as a matter of law, we use the same standard to review the verdict as that used by the district court. *See Hiltgen v. Sumrall,* 47 F.3d 695, 699-700 (5th Cir.1995). We must uphold the jury verdict unless " "there is no legally sufficient evidentiary basis for a reasonable jury to find' as the jury did." *Id.* (quoting Fed.R.Civ.P. 50(a)(1)). We review the evidence and all reasonable inferences in the light most favorable to the verdict. *See Polanco v. City of Austin,* 78 F.3d 968, 974 (5th Cir.1996). We must, however, consider all of the evidence, not merely that favorable to the nonmovant, and a "mere scintilla" of evidence is insufficient to sustain a jury verdict. *See Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc). Although we draw inferences favorable to the verdict, such inferences must be reasonable and may not rest upon speculation and conjecture only. *See Love v. King,* 784 F.2d 708, 711 (5th Cir.1986).

B

In order to establish that one's First Amendment right to free speech has been violated by an employer's retaliatory conduct, a plaintiff must prove that (1) her conduct was protected by the First Amendment, and (2) that such conduct was a "substantial" or "motivating" factor behind the defendant's action. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 283-87, 97 S.Ct. 568, 574-76, 50 L.Ed.2d 471 (1977); *Click v. Copeland,* 970

7

F.2d 106, 113 (5th Cir.1992). If the plaintiff carries this burden, the defendant must then show, by a preponderance of the evidence, that it would have taken the same action against the plaintiff even in the absence of the protected conduct. *See Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576; *Click,* 970 F.2d at 113. In this case, the Appellants admit that Brady's conduct was protected by the First Amendment, and therefore we address only whether Brady has satisfied the causation prongs of the *Mt. Healthy* test.

## C

### 1

Brady asserts that she was divested of her job duties as systems programmer in retaliation for the protected statements that she had made to HISD's investigators concerning Carney's improper dealings with Winkler. In support of her contention, she presents a chronology of events that allegedly gives rise to an inference of retaliation. Specifically, Brady maintains that since her hiring in 1984, she had uniformly been viewed as a trusted, respected, and diligent employee by her supervisors in the data processing department. After many exemplary years as systems programmer, in 1991, she implicated Ernie Carney in a scandal, and as a result of her testimony, HISD ceased employing Carney as an outside computer consultant. Even after making the protected statements, Brady was still considered to be a valuable employee, and she was twice recommended for promotion by both Cortese and Mahaffey, her direct supervisors. In January 1993, however, when Carney—the individual

8

inculpated by Brady—returned to HISD, the Appellants stripped Brady of her duties as systems programmer and outsourced these duties to Carney. This action, Brady maintains, gives rise to an inference of retaliation.

In addition to the above narrative, Brady bolsters her retaliation claim by pointing out inconsistencies in the Appellants' testimony. For example, she notes that: (1) although the Appellants claimed to have restricted Brady's computer access in response to OSI's request for exclusive access to the system, they nonetheless allowed another HISD employee to access the system; (2) the Appellants testified that outsourcing Brady's duties was a cost-saving proposal, while Faye Bryant testified that cost was never mentioned in meetings held to consider outsourcing; (3) outsourcing was not, in reality, a cost-saving measure, for the Appellants continued to employ and pay Brady as the systems programmer from 1993 through 1995, although OSI actually performed and was paid for handling the systems-programmer duties during that period; (4) in the months immediately after the Appellants outsourced Brady's duties to OSI, they provided her with contradictory information regarding whether they would return her job responsibilities to her; and (5) the Appellants mishandled Brady's grievance process.

2

Given Carney's prior dishonest conduct, it does appear suspicious to us that the Appellants dispossessed Brady of her job duties upon Carney's return to HISD. Nevertheless, our review of

9

the record convinces us that the evidence is insufficient to support Brady's First Amendment claim against the Appellants. At the outset, we note that it is entirely reasonable to conclude that Carney harbored a retaliatory motive against Brady, for it was she who implicated him in the scandal. Brady has long since abandoned her First Amendment claim against Carney, however, and before us is Brady's First Amendment claim against Cortese, Mahaffey, and Sokol only. She must therefore prove that her protected speech was a substantial or motivating factor behind the decision of the three Appellants—not Carney—to divest her of systems programmer duties. This Brady has failed to do.

First, and most obviously, Brady has presented no direct evidence that any of the Appellants possessed a retaliatory motive. This by itself, of course, is not fatal to a First Amendment retaliation claim, for Brady may also rely upon "a chronology of events from which retaliation may plausibly be inferred." *See Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir.1995) (internal quotation marks omitted), *cert. denied,* --- U.S. ----, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996). We believe, however, that Brady has also failed to present a chronology of events that would allow reasonable jurors to draw an inference of retaliation.

It is undisputed that Brady—in her protected First Amendment statements to the HISD investigators—implicated only Ernie Carney and Alexander Winkler in wrongdoing; she herself admitted at trial that her allegations did not concern Cortese (who was not even

10

employed at HISD at the time), Mahaffey, or Sokol.[5]  In addition, Brady has presented absolutely no evidence that the Appellants may have retaliated on behalf of, or conspired with, Carney or Winkler. Brady has not alleged that Cortese, Mahaffey, and Sokol were friendly with Carney, and indeed Cortese was first introduced to Carney by Brady herself.  Moreover, both Mahaffey and Sokol testified that they disliked Winkler intensely, and there is no evidence suggesting that Cortese ever met Winkler.  We therefore find it difficult to believe that any of the Appellants would retaliate against an employee whose protected speech did not adversely affect them in any way.[6]

---

[5]The parties argue about whether the three Appellants even knew the substance of Brady's testimony.  Because we view the evidence in the light most favorable to the verdict, *see Polanco,* 78 F.3d at 974, we proceed under the assumption that Appellants were in fact aware of Brady's testimony.

[6]Brady suggests two possible retaliatory motives:  (1) Mahaffey and Sokol were themselves implicated in the 1991 scandal, and (2) the scandal subjected the data processing department as a whole to embarrassment.  Neither of these two contentions has merit.

First, the evidence linking Mahaffey and Sokol to the 1991 scandal was extremely weak.  Brady testified at trial that both of them were investigated—but not implicated—in the scandal, but she did not suggest that either man committed wrongdoing of any sort, and there is no evidence that they were detrimentally affected in any way.  Moreover, regardless of the weight of the evidence against Mahaffey and Sokol, Brady admitted that she was not the one who had brought the unsubstantiated accusations against them.  Therefore, even if Mahaffey and Sokol did harbor ill will because of the investigation, such sentiments would not have been directed at her.

We are also unmoved by Brady's assertion that department-wide embarrassment prompted the Appellants to retaliate against her.  Certainly Cortese could not have been embarrassed by any improprieties that occurred before his

11

Brady's case suffers from other critical flaws. During the eighteen month period between Brady's protected statements and the Appellants' alleged retaliation, Mahaffey and Cortese gave Brady positive evaluations and twice recommended that she be promoted. This fact is utterly inconsistent with an inference of retaliation, and we fail to understand why two individuals allegedly harboring a retaliatory motive against Brady would take affirmative steps to secure a job promotion for her.[7]

The Appellants have also presented a believable, non-retaliatory reason for outsourcing the systems programmer duties. They contend that as administrators in the data processing department, they were under tremendous pressure to solve the malfunction with the financial programs that occurred after the December 1992 conversion. Brady herself was unable to remedy the problem, and she requested the assistance of Carney, who—despite his other faults—was a very competent systems programmer familiar with HISD's computer operations. The problem was resolved shortly after Carney arrived, although the parties dispute whether Brady or

_____

tenure at HISD, and it simply stretches the imagination too far to presume that an assertion of such insignificance, by itself, could provide a retaliatory motive for Mahaffey and Sokol.

[7]Moreover, nearly eighteen months elapsed between the date of Brady's testimony and the date upon which her access to the computer system was restricted. This lengthy lapse of time, when coupled with the lack of other evidence supporting Brady's case, suggests that a retaliatory motive was highly unlikely. *See Grizzle v. Travelers Health Network, Inc.,* 14 F.3d 261, 268 (5th Cir.1994) (reaching the same conclusion in a case involving a ten-month lapse of time between the protected statements and the alleged retaliation).

Carney was responsible for the solution.  Spurred by the crisis, but also concerned more generally with Brady's ability to permanently handle the systems-programmer duties by herself, Cortese testified that he considered two options:  (1) hiring another systems programmer to fill the second systems programmer position that had been vacant during Brady's tenure at HISD, or (2) outsourcing the systems programmer duties.  Cortese eventually settled on outsourcing, he testified, because it would both improve service and save money.  The Appellants explain that outsourcing to a company such as OSI is a more cost-effective way of ensuring the computer systems's stability because HISD may rely upon the computer support of an entire company's consultants rather than that of just one individual.[8]

Finally, we do not think that Brady's list of the Appellants' inconsistencies establishes that her protected speech was a substantial or motivating factor behind the Appellants' decision to outsource her job responsibilities.  Brady must affirmatively prove—either with direct evidence or with a plausible chronology of events—that the Appellants divested her of the systems-programmer duties because of her First Amendment speech.  This she has not done.  Merely pointing out inconsistencies in the Appellants' stated justifications for outsourcing and their other actions does

_____

[8]Cortese's decision to outsource the systems programmer duties is consistent with his prior behavior.  He had previously outsourced HISD's data entry positions and testified that he had considered outsourcing the systems programmer position on cost-related grounds even before the problems arose in connection with the December 1992 conversion.

13

not by the mere fact itself create the opposite inference that the Appellants harbored retaliatory motivation. Furthermore, we think that Brady's list of alleged inconsistencies is overstated. Some of her contentions are after-the-fact attacks on the prudence of the Appellants' decision to outsource; others establish only that the Appellants mishandled a delicate situation involving the termination of a long-time employee; and still others suggest that the decision to outsource was based upon multiple reasons and that not all of the HISD administrators were involved in the entire decision-making process. None of her assertions, however, affirmatively indicates that any of the Appellants possessed a retaliatory motive, especially when viewed in conjunction with the dearth of any evidence suggesting retaliation.

3

Because Brady has not shown that her protected speech was a substantial or motivating factor behind the Appellants' decision to outsource the systems-programmer responsibilities, we therefore conclude that Brady has presented insufficient evidence to sustain her First Amendment retaliation claim. Although we may be sympathetic to a trusted employee who has been cast aside after years of exemplary work, we nonetheless cannot assume, in the absence of any such evidence, that she was divested of her responsibilities in retaliation for protected statements. We therefore reverse the district court's order denying the Appellants' motion for judgment as a matter of law and render judgment for the Appellants. Because we hold that the Appellants

14

have prevailed on the merits, we also reverse Brady's award of attorney's fees.

III

In her cross-appeal, Brady maintains that the district court erred by:  (1) granting Carney's motion for summary judgment on her claim of tortious interference with a business relationship;  (2) granting Carney's and the HISD employees' motions for judgment as a matter of law on her § 1983 conspiracy claim;  (3) granting Carney's motion for judgment as a matter of law on her claim of intentional infliction of emotional distress;  (4) granting HISD's motion for summary judgment on her claim arising under the Texas Whistleblower Act;  and (5) reducing her award of attorney's fees.

Because we conclude that these contentions are wholly without merit, we affirm the district court in all respects.

IV

For the foregoing reasons, we REVERSE and RENDER judgment in favor of Cortese, Mahaffey, and Sokol, and we AFFIRM in all other respects.

REVERSED and RENDERED in part;  AFFIRMED in part.

15