# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 14-41414

————

EDILIO DEL BOSQUE,

Plaintiff - Appellant

v.

STARR COUNTY, TEXAS; RUBEN SAENZ, Starr County Commissioner, in his Official and Individual Capacity,

Defendants - Appellees

_____

VICTOR CANO; JOSE GERARDO GONZALEZ,

Plaintiffs - Appellants

v.

STARR COUNTY, TEXAS; RUBEN SAENZ, Starr County Commissioner, in his Official and Individual Capacity,

Defendants - Appellees

————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC Nos. 7:14-CV-17, 7:13-CV-576

————————————

United States Court of Appeals
Fifth Circuit

**FILED**

November 23, 2015

Lyle W. Cayce
Clerk

No. 14-41414

Before STEWART, Chief Judge, and BARKSDALE and PRADO, Circuit Judges.

PER CURIAM:*

This appeal arises from Starr County, Texas Commissioner Ruben Saenz's decision to terminate Starr County employees Edilio Del Bosque, Victor Cano, and Jose Gerardo Gonzalez (collectively, the "Plaintiffs"). Plaintiffs filed suit against Saenz and Starr County, Texas (collectively, the "Defendants"), claiming that they were terminated in retaliation for reporting misuse of County resources by Saenz. All three Plaintiffs argue that such retaliation violates their free speech rights under the First Amendment. Del Bosque also argues that the alleged retaliation violates the Texas Whistleblower Act. Defendants filed motions for summary judgment, which the district court granted. For the reasons stated herein, we REVERSE and REMAND for further proceedings consistent with this opinion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The story of this case begins when Saenz was appointed Starr County Commissioner for Precinct 4 in September 2011. At the time, Del Bosque served as the Precinct 4 foreman, supervising 15–20 "roadhand"[1] employees including Cano and Gonzalez. As the Starr County Commissioner, Saenz had oversight authority over Del Bosque and his workers.

### *Alleged Misuse of Starr County Resources*

Plaintiffs claim that, shortly after his appointment, Saenz began abusing County resources. Two of the incidents involved using County resources for

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] "Roadhands" are something akin to manual laborers. Their responsibilities include tasks like picking up and dumping trash, driving tractors and trucks, and spreading caliche. "Caliche" is a sedimentary rock that is often used for road construction.

No. 14-41414

Saenz's own benefit. First, in approximately January 2012, Saenz ordered Gonzalez, Del Bosque, and other Starr County workers to cut mesquite firewood and deliver it to his house. Second, in January or February 2012, a supervisor in Precinct 4, David Morales ("Supervisor Morales"), ordered Cano and others to drop off and spread caliche at Saenz's private residence while he and Saenz supervised the work.

The remaining three incidents involved using County resources to dump and spread caliche on private property for other individuals. In January 2012, Saenz supervised the use of County resources to dump and spread caliche at the parking lot of Lane's Café in San Isdro, Texas (the "San Isdro Incident"). Then, sometime in January or February 2012, Supervisor Morales ordered Cano, Gonzalez, and others to drop off caliche at the private residences of Cuco Alaniz and Irma Andrade.[2]

None of the Plaintiffs reported their allegations of misuse of Starr County resources directly to Saenz. However, in approximately January or February 2012, Plaintiffs disclosed their allegations to a number of other individuals, including the local District Attorney and several of Saenz's advisors. For example, Cano told Del Bosque that he was ordered to spread caliche at Saenz's private property. In response, Del Bosque called Municipal Judge Leo Lopez ("Judge Lopez") to discuss Saenz's misuse of Starr County resources. Judge Lopez served as an advisor to Saenz when he took office as Commissioner. Cano and Del Bosque also disclosed Saenz's alleged misuse of County resources to Starr County's Human Resource Director and Elections Administrator, Rafael Montalvo ("Montalvo"), and Saenz's administrative assistant, Anita Hammond ("Hammond"). Montalvo was involved in the

---

[2] At his deposition, Saenz conceded that Cuco Alaniz and Irma Andrade are well-respected in the community and that he would like to have their support in future elections.

termination process under consideration in this case, and Hammond interacted with Saenz every day, including on budget issues.  Finally, Del Bosque and Gonzalez discussed the issue with Supervisor Morales; Morales met with Saenz behind closed doors daily.[3]

Around the same time period as these reports, in February 2012, the Starr County District Attorney's Office (the "District Attorney") began investigating Saenz for "abuse of official capacity" in relation to the San Isdro Incident.

### *The Alleged Retaliation Against Plaintiffs*

When Saenz took office in late 2011, he decided to set up his own staff, so he had all forty-four employees in his office reapply for their jobs.  Of the forty-four employees to reapply, eleven—including Plaintiffs—were not rehired.[4]  Plaintiffs' at-will employment with Starr County was officially terminated on March 19, 2012.  Saenz consulted Judge Lopez regarding the terminations and Montalvo signed Plaintiffs' termination letters.

### *Procedural History*

Del Bosque filed suit against the Defendants claiming that his termination was the result of illegal retaliation under Texas Government Code §§ 554.001–554.010 (the "Texas Whistleblower Act" or "Act") and the First Amendment.  Similarly, Cano and Gonzalez filed suit against the Defendants for retaliation in violation of the First Amendment.  Defendants filed motions

---

[3] Cano also disclosed Saenz's alleged misuse of County resources to other roadhands some time prior to March 2012.  He believes some of the workers reported him to Supervisor Morales because, shortly after his disclosures, Supervisor Morales began treating him differently.

[4] Thus, Plaintiffs were technically not "rehired," although the parties often use the term "terminated" interchangeably.  Plaintiffs are skeptical that this "rehire" process actually occurred; however, Del Bosque testified to going through the reapplication process.  Plaintiffs also obviously challenge the timing of and motivation behind Saenz's decision not to rehire them.

for summary judgment in both actions.  The cases were consolidated and the district court granted Defendants' motions for summary judgment.

## II.    STANDARD OF REVIEW

"We review a district court's grant of summary judgment *de novo*, applying the same standard as did the district court." *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute about a material fact exists when the evidence presented on summary judgment is such that a reasonable jury could find in favor of the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  For purposes of this determination, "all fact questions are viewed in the light most favorable to the non-movant." *Hassan v. Lubbock Indep. Sch. Dist.*, 55 F.3d 1075, 1079 (5th Cir. 1995).

## III.    DISCUSSION

### A.

Plaintiffs argue that their terminations were the result of improper retaliation under the First Amendment.  To prove a First Amendment employment retaliation claim, a plaintiff must show that (1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in commenting on matters of public concern outweighs the defendant's interest in promoting efficiency; and (4) his speech motivated the adverse employment decision (*i.e.*, causation). *Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001).

The district court here concluded that Plaintiffs failed to raise a genuine dispute of material fact as to the causation element.  We evaluate causation in this context using a three-step analysis.  First, the plaintiff has the initial burden of showing that his protected speech was a substantial or motivating

No. 14-41414

factor in the defendant's adverse employment decision.  *Haverda v. Hays Cty.*, 723 F.3d 586, 591 (5th Cir. 2013).  The defendant may rebut this initial showing by demonstrating that it would have taken the same adverse employment action even in the absence of the protected speech.  *Id.* at 591–92.  The plaintiff may then refute that showing by presenting evidence that the defendant's non-retaliatory explanation is merely pretextual.  *Id.* at 592.

Plaintiffs withstand summary judgment under this analysis.

### 1.

Plaintiffs made a sufficient *prima facie* showing of causation to survive summary judgment.  The district court granted Defendants' motions for summary judgment based solely on its finding that Plaintiffs had failed to make a *prima facie* showing of causation between their protected speech (their reports of Saenz's alleged misuse of County resources) and their termination.  In doing so, the district court explained that "Plaintiffs essentially provide no evidence of knowledge and only some vague testimony of temporal proximity" and that Plaintiffs "cannot simply rely on evidence that the employer's [non-retaliatory explanation] is false."

As an initial matter, the district court erred in discounting Plaintiffs' evidence of pretext.  The district court found—and the Defendants argue—that pretext evidence is only relevant at the third stage of the causation analysis (*i.e.*, to rebut the defendant's showing that it would have taken the same adverse employment action even in the absence of the protected speech).  Although this court has occasionally considered evidence in this neatly separated manner, *see, e.g.*, *id.* at 592–97, attempting to cabin pretext evidence into the third prong is contrary to other precedent and commonsense.  *See, e.g.*, *Jordan v. Ector Cty.*, 516 F.3d 290, 300–01 (5th Cir. 2008); *Brady v. Fort Bend Cty.*, 145 F.3d 691, 713–14 (5th Cir. 1998); *Click v. Copeland*, 970 F.2d 106, 113–14 (5th Cir. 1992).  Given that this evidence is relevant to the inquiry, and

presented at the summary judgment stage, the district court was required to view it in the light most favorable to the Plaintiffs.

Here, Plaintiffs present substantial and powerful evidence of pretext. Perhaps most striking of this evidence is Saenz's inconsistent statements regarding his reasons for terminating Del Bosque. In a sworn interrogatory response, Saenz stated that he chose Del Bosque for termination because he had to reduce payroll and "had heard rumors that [Del Bosque] had assaulted another employee during work hours." However, during his later deposition, Saenz stated that his interrogatory answer was not accurate and that the alleged assault was not a factor in his decision. When pressed on his actual reasons, Saenz stated that he chose Del Bosque for termination because of "job performance." However, Saenz was not able to point to any specific issues with Del Bosque's job performance and ultimately admitted that he did not know why he chose to terminate Del Bosque in particular. Similarly, Saenz could not provide any specific reason for why he chose to terminate Cano or Gonzalez.[5]

Plaintiffs also offer affirmative evidence that at least partially undermines Defendants' budgetary explanation for the terminations (and Defendants provide no other consistent independent explanation). For example, Hammond, who assists Saenz with the budget, testified that the budget did not clearly call for terminations. The County also hired three new

---

[5] Saenz's testimony regarding other aspects of the case also indicate that there are material disputes of fact. For example, Saenz testified that he never met with Supervisor Morales in his office. However, Saenz's assistant, Hammond, testified that the two met behind closed doors daily, including about the San Isdro Incident. Saenz also provided bizarre testimony regarding the caliche that was delivered to his house; Saenz admitted that a load of caliche was delivered to his private residence, but claimed that he did not know who delivered it or why they delivered it, and never asked anyone where it came from.

roadhands within seven months of the terminations and still ran an overall $30,000 budget surplus for the fiscal year.

Plaintiffs meet the rest of their burden on causation by relying on circumstantial evidence to form "a chronology of events from which retaliation may plausibly be inferred":  (1) in January or February of 2012, Plaintiffs began to notice Saenz's misuse of County resources; (2) sometime between January and March 19, 2012, Plaintiffs reported this misconduct to a number of individuals who worked with Saenz on a regular basis, several of which also advised Saenz on the termination process;[6] (3) around the same time, the District Attorney was investigating Saenz for misuse of County resources—the same issue that formed the basis of Plaintiffs' reports—and Saenz was aware of this investigation; and (4) Plaintiffs were then terminated shortly after their reports, on March 19, 2012.[7]  *See Brady v. Houston Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997); *Mooney v. Lafayette Cty. Sch. Dist.*, 538 F. App'x 447, 454 (5th Cir. 2013).

One remaining issue is that Plaintiffs have no direct evidence that Saenz was aware of their reports.  Obviously, causation requires evidence that the decision-maker have some predicate knowledge of a plaintiff's protected

---

[6] At oral argument, counsel for Defendants acknowledged that there is contradictory evidence regarding whether and to what extent Plaintiffs reported Saenz's alleged misconduct.  This evidentiary conflict creates a genuine dispute of material fact that is not appropriate for summary judgment adjudication.  *See* Fed. R. Civ. P. 56(a); *Hassan*, 55 F.3d at 1079.

[7] The district court highlighted some uncertainty in the Fifth Circuit regarding when temporal proximity between a report and an adverse employment decision alone is sufficient to make a *prima facie* showing of causation.  *Compare Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) ("[T]emporal proximity alone, when very close, can in some instances establish a *prima facie case* of retaliation."), *with Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) ("[A] time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes" in Title VII retaliation cases).  Regardless, Plaintiffs here are not relying solely on temporal proximity; it is one of several factors Plaintiffs argue in support of their complaint.

speech. *See Cabrol v. Town of Youngsville*, 106 F.3d 101, 108 (5th Cir. 1997). However, we have consistently held that direct evidence of retaliatory motive is not necessary to show causation. *See Houston Indep. Sch.*, 113 F.3d at 1424. Plaintiffs here provide circumstantial evidence that their reports were relayed to Saenz: they reported to individuals who regularly met with and advised Saenz. Most notably, Plaintiffs reported the misconduct to Judge Lopez, and Judge Lopez later advised Saenz regarding the actual terminations at issue. Viewed in the light most favorable to the Plaintiffs, this is sufficient evidence of knowledge at the summary judgment phase. Accordingly, we hold that Plaintiffs made a sufficient *prima facie* showing of causation to survive summary judgment.

**2.**

We now turn to Defendants' non-retaliatory explanation for terminating Plaintiffs. "[A] public employee who is discharged or otherwise disciplined for engaging in constitutionally protected conduct is not entitled to any relief if the employer can prove that it would have taken the same action absent that conduct." *Scott v. Flowers*, 910 F.2d 201, 209 (5th Cir. 1990). Defendants put forward a compelling budgetary explanation for the terminations. Several witnesses testified that, faced with the relevant budgetary numbers, Saenz decided to cut staff sometime between October and December 2011 (before any of the alleged reports). Notably, Defendants also terminated eight other employees in the same termination process. Thus, Defendants put forward a facially viable non-retaliatory explanation for the terminations.

**3.**

However, we conclude that Plaintiffs sufficiently refuted Defendants' non-retaliatory explanation. "[I]f a plaintiff brings forth evidence of pretext, the determination whether the employer's stated reasons are pretextual is a fact issue reserved for the jury." *Haverda*, 723 F.3d at 595–96. As previously

discussed, Plaintiffs (1) point to a number of examples in the record where Saenz gave contradictory reasons for terminating Plaintiffs and (2) provide affirmative evidence that at least partially undermines Defendants' budgetary explanation. This evidence is sufficient to create an issue of fact. *See id.* at 596–97.

Accordingly, we hold that Plaintiffs raised a genuine dispute of material fact on the causation element of their First Amendment retaliation claim.

## B.

Del Bosque also claims that his termination was the result of improper retaliation under the Texas Whistleblower Act. A governmental entity is liable for damages under the Act if it discriminates against a public employee who in good faith reports a violation of law to an appropriate law enforcement authority. *See* Tex. Gov't Code Ann. §§ 554.002–.003 (West 2012); *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 67 (Tex. 2000). To state a claim, the employee must show causation between his report and the employer's discriminatory conduct. *Zimlich*, 29 S.W.3d at 67. However, the employee need only prove but-for causation; a plaintiff is not required to show that his report of illegal activity was the sole reason for the employer's adverse action. *See Tex. Dep't of Human Servs. of State of Tex. v. Hinds*, 904 S.W.2d 629, 634–36 (Tex. 1995).

Here, Del Bosque argues that he was terminated in retaliation for reporting Saenz's misconduct to the District Attorney. The district court again found that Del Bosque failed to raise a genuine dispute of material fact as to causation, largely citing its analysis of Del Bosque's First Amendment claim.

We conclude, however, that Del Bosque did provide sufficient evidence to survive summary judgment on his Texas Whistleblower Act claim.[8] Texas

---

[8] As a preliminary matter, Del Bosque is entitled to an initial presumption of causation under the Act because he was terminated within 90 days of his report. *See* Tex. Gov't Code Ann. § 554.004 (West 2012). "However, the presumption does not shift the burden

courts have consistently held that "[c]ircumstantial evidence may be sufficient to establish a ca[us]al link between the adverse employment action and the reporting of illegal conduct." *Zimlich*, 29 S.W.3d at 69; *City of El Paso v. Parsons*, 353 S.W.3d 215, 226 (Tex. App.—El Paso 2011).  Such evidence includes the employer's knowledge of the report of illegal conduct, evidence that the stated reason for the adverse employment action was false, and temporal proximity between the report and the adverse action.  *Zimlich*, 29 S.W.3d at 69; *Rogers v. City of Fort Worth*, 89 S.W.3d 265, 281 (Tex. App.— Fort Worth 2002).

Here, Del Bosque identifies the same temporal proximity and pretext evidence from his First Amendment claim.  He also provided circumstantial evidence that Saenz was aware of his report to the District Attorney—namely, that (1) Del Bosque also told Saenz's assistant, Hammond, about his report to the District Attorney, and (2) Saenz admitted that he was aware of the District Attorney's investigation.  Texas case law suggests that this circumstantial evidence is sufficient to create a genuine dispute of material fact.  *See Parsons*, 353 S.W.3d at 226–27 (plaintiff made sufficient showing of causation by relying on (1) circumstantial evidence of the employer's knowledge, (2) temporal proximity between the report and the adverse employment action, and (3) evidence that the employer's non-retaliatory explanations were "pretextual and false."); *see also Senior Living Props., L.L.C. v. Cole*, No. 10-06-00227-CV, 2007 WL 2729567, at *3–7 (Tex. App.—Waco Sept. 19, 2007) (finding sufficient evidence of but-for causation where employer denied knowledge of report and plaintiff lacked direct evidence of employer's knowledge, and noting that

---

of proof and stands only in the absence of contrary evidence." *City of Houston v. Levingston*, 221 S.W.3d 204, 226 (Tex. App.—Houston [1st Dist.] 2006).  Here, Defendants provided affirmative evidence showing a non-retaliatory motive.  Thus, the burden of proof falls back on Del Bosque and the analysis proceeds "as if no presumption had ever existed." *Id.*

"[p]roof that the stated reasons for the discharge are false is sufficient to establish that the employee was terminated in retaliation for engaging in protected activity").

Therefore, we conclude that Del Bosque raised a genuine dispute of material fact as to causation for his Texas Whistleblower Act claim.

## IV.    CONCLUSION

For the foregoing reasons, we REVERSE the district court's grant of summary judgment in favor of the Defendants and REMAND for further proceedings consistent with this opinion.