**Tami L. CANNIZZARO, Plaintiff,**

v.

**NEIMAN MARCUS, INC., Defendant.**

**Civil Action No. 3:96–CV–0934–P.**

United States District Court,
N.D. Texas,
Dallas Division.

Aug. 20, 1997.

Kay Lynn Van Wey, Julie Elizabeth Johnson, Van Wey & Johnson, Dallas, TX, for Plaintiff.

Stephen Fred Fink, Marc H. Klein, Thompson & Knight, Dallas, TX, for Neiman Marcus Inc.

## MEMORANDUM OPINION AND ORDER

SOLIS, District Judge.

Now before the Court are Defendant's Motion for Summary Judgment, Plaintiff's Motion for Continuance Under Rule 56(f) and Brief in Support of Opposition to Motion for Summary Judgment,[1] and Reply Brief in Support of Defendant's Motion for Summary Judgment and Response to Plaintiff's Rule 56(f) Motion for Continuance. Based on the evidence before the Court and the authorities presented, the Court hereby **DENIES** Plaintiff's Motion(s) for Continuance and **GRANTS** Defendant's Motion for Summary Judgment.

## I. THE FACTS

Plaintiff ("Cannizzaro") was employed by Defendant Neiman Marcus ("NM") for approximately 10 years when she learned that she had a subdural hematoma. Cannizzaro underwent brain surgery to have the mass removed. During the week following her surgery, Cannizzaro suffered seizures and was placed on anti-seizure medications, which she alleges she continues to take.[2] Immediately following her surgery, Cannizzaro's physician ("Dr.Morgan") directed her to refrain from lifting, bending, driving and engaging in any physical activity beyond normal walking. Cannizzaro's position at NM required her to lift, bend and spend several hours on her feet. About that time, Cannizzaro informed NM that she would be unable to return to work for approximately three months. Under NM's short term disability plan in effect at the time, Cannizzaro was entitled to receive full salary for 26 weeks. While Cannizzaro was on short term disability, NM filled her position.

When Cannizzaro was released to return to work, Dr. Morgan placed certain restrictions on Cannizzaro's release. She was not to bend more than 20 degrees; she could not lift anything weighing more than 10 pounds;

---

1. Plaintiff filed on the same day a separate document titled "Plaintiff's Motion for Continuance Under Rule 56(f) and Response to Defendant's Motion For Summary Judgment," which contains memorandum opinion and order disposes of both motions.

2. Cannizzaro has testified that she suffered no further seizures once her medication became regulated. Cannizzaro Depo. p. 17.

she was prohibited from lifting anything (including a light briefcase) more than 2–3 times daily; she was not to work more than 5 hours per day the first week she returned, but she should be able to ease into the traditional 40 hour work week by the second week; and she could not travel by airplane more than once per month. Cannizzaro informed NM of these restrictions.

Cannizzaro continued to receive short-term disability benefits while she interviewed for vacant positions with NM. Cannizzaro was not hired for any of the seven positions for which she interviewed.[3] NM agreed to extend Cannizzaro's benefits by one month, and allowed her to exhaust all of her accrued vacation and other paid leave while Cannizzaro was interviewing. This allowed Cannizzaro to continue to receive her pay and benefits for approximately three more months. During this time period, the evidence indicates that Cannizzaro met with the neurosurgeon who had removed her subdural hematoma ("Dr.Finn"). Dr. Finn's notes state "[Cannizzaro] is doing extremely well. She is absolutely asymptomatic. She is back to normal." Cannizzaro Depo. Ex. 23.

About one month prior to the expiration of her benefits, NM's Vice President of Human Resources ("Johnson") and the head of Employee Benefits ("Danes") scheduled a meeting with Cannizzaro. At this meeting, Danes told Cannizzaro that "we don't think your career is here at Neiman's anymore." When Cannizzaro asked why, Johnson stated "well, you're not getting any of the positions you interview for." Johnson and Danes then offered Cannizzaro the paid assistance of an outside job placement firm to help her locate a position with a company other than NM. Cannizzaro accepted the referral, alleging that she believed herself to be terminated at this point.

Shortly thereafter, Cannizzaro filed a claim for unemployment benefits despite remaining on NM's payroll and receiving vacation pay. Cannizzaro indicated in her application that she could perform any job not involving lifting or bending. About the time all of her paid leave was exhausted, Cannizzaro obtained a position as a special events project manager with the Zales Corporation. The day before she started her new job, Cannizzaro filed a charge with the Equal Employment Opportunity Commission ("EEOC") against NM alleging sex and disability discrimination. Thereafter, Cannizzaro received her right to sue letter and filed this action, alleging causes of action under the Americans With Disabilities Act ("ADA"); negligent training, supervision and retention; and intentional infliction of emotional distress. NM has moved for summary judgment on all counts in Cannizzaro's complaint, and Cannizzaro seeks a continuance to obtain

---

3. Cannizzaro's Complaint alleges the existence of a total of 15 positions for which she claims to have been qualified. The evidence before the Court, however, indicates the existence of and Cannizzaro's application for seven positions only. Cannizzaro alleges that she was not hired into any of these positions because of her disability or, in the alternative, because NM regarded her as being disabled. In support of this contention, Cannizzaro relies on the following allegations/statements:

1) an "overall lack of meaningful assistance in identifying open positions";
2) refusal to give Cannizzaro "access to NM's computerized database which listed job openings";
3) "patronizing suggestions ... that she refrain from seeking lower-paying positions";
4) allegedly repeated questions from unspecified interviewers about her brain condition in interviews;
5) comments from unspecified speakers that she was "overqualified" for unspecified positions;

6) the fact that she was not offered a single job after her illness;
7) a comment allegedly made to Cannizzaro that "Neiman's owes you nothing!";
8) Cannizzaro's allegation that she was refused the ability to have her attorney accompany her to a meeting; and
9) a comment attributed to one of the seven hiring managers who interviewed her ("Earnheart"), which appears in notes drafted by NM's Human Resource Manager ("McBride") in which McBride states that Earnheart "was not interested in going forward with [Cannizzaro] 'for her sake' as he put it. He said [h]e felt the job would 'kill her.' He then went on to describe in detail her entire illness and treatment." McBride Depo. Ex. 8.

NM has provided evidence of legitimate nondiscriminatory reasons for Cannizzaro's failure to be hired into each of the positions. See Appendix A.

further discovery to establish that a genuine issue of material fact exists precluding summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986); *Thomas v. Harris County*, 784 F.2d 648, 651 (5th Cir.1986). Material facts are facts that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). All evidence and the inferences to be draw therefrom must be viewed in the light most favorable to the party opposing the motion. *Marshall v. Victoria Transp. Co.*, 603 F.2d 1122, 1123 (5th Cir.1979). Such inferences must be reasonable and may not rest upon speculation and conjecture only. *Brady v. Houston Indep. School Dist.*, 113 F.3d 1419, 1422 (5th Cir.1997).

The nonmovant must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). A "mere scintilla" of evidence is insufficient to present a question for the jury. *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 804 (5th Cir.1997). The party defending against a motion for summary judgment cannot defeat the motion unless he provides specific facts that show the case presents a genuine issue of material fact, such that a jury might return a verdict in his favor. *Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514–15. When the record taken as a whole could not lead a rational trier of fact to find for the nonmovant, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

The party opposing the motion must come forward with competent summary judgment evidence. *Id.* at 586, 106 S.Ct. at 1355–56. Conclusory statements unsupported by evidentiary facts will not defeat a motion for summary judgment. *Falls Riverway Realty, Inc. v. Niagara Falls*, 754 F.2d 49 (2d Cir. 1985); *Morton v. GTE North Inc.*, 922 F.Supp. 1169, 1181 (N.D.Tex.1996), *aff'd* 114 F.3d 1182 (5th Cir.1997). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *Anderson*, 477 U.S. at 248–50, 106 S.Ct. at 2510–11. Nor may the nonmovant rest on mere allegations or denials in its pleadings. *Id.* Evidence not significantly probative or that is "merely colorable" will not defeat a properly supported motion for summary judgment. *Id.*

When the nonmoving party fails to make the requisite showing and the moving party has met his summary judgment burden, the movant is entitled to summary judgment. Fed.R.Civ.P. 56(c); *Campbell v. Sonat Offshore Drilling*, 979 F.2d 1115, 1119 (5th Cir. 1992). *Coghlan v. H.J. Heinz Co.*, 851 F.Supp. 808, 811 (N.D.Tex.1994). Moreover, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to his case and on which he will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. The court has no duty to search the record for triable issues. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 402 (6th Cir.1992). The court need only rely on the portions of submitted documents to which the nonmoving party directs. *Id.* at 403.

### A. Continuance

Rule 56(f) provides:

**When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be

had or may make such other order as is just.

Fed. R. Civ. Proc. 56(f).

In its affidavits, a party must present specific facts explaining its inability to respond substantively and also demonstrate how delaying a ruling will enable the party to rebut the motion. *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir.1993); *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267–68 (5th Cir.1991). The nonmovant may not rely on vague assertions that discovery will produce needed, but unspecified facts. *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir.1980), *cert. denied*, 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981). Moreover, the court "need not aid [parties] who have occasioned their own predicament through sloth." *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir.1992), *cert. denied*, 508 U.S. 910, 113 S.Ct. 2340, 124 L.Ed.2d 251 (1993). Finally, as Defendant points out, the federal rules "shall be construed and administered to secure the just, speedy and inexpensive determination of every action." Fed.R.Civ.P. 1.

 In her motion, Cannizzaro states:

Counsel for Neiman Marcus previously allowed counsel for Cannizzaro an opportunity to informally interview several employees by telephone in lieu of both parties incurring the expense of numerous depositions. Based upon such interviews, Cannizzaro believes that these employees will provide sworn affidavits or deposition testimony favorable to Cannizzaro, particularly with respect to the knowledge employees had regarding Cannizzaro's disability and the perceptions generally and specifically held by employees regarding her substantial limitations and ability to work in general. However, Cannizzaro must be afforded the opportunity to procure such testimony under oath....

Pl. Mtn. for Cont. p. 1. Cannizzaro goes on further to state: "While many [individuals] have signed affidavits in support of Defendant's motion, only Manuel Zaby and Robin McBride have been deposed. Cannizzaro would like, and deserves, the opportunity to depose each of the individuals with respect to their perceptions of her and their knowledge of her medical condition and limitations prior to and during interviews with her." *Id.* at p. 15. Additionally, Cannizzaro argues that "At a minimum, the evidence adduced with respect to Bill Ernhardt [sic] and his prejudicial stereotypes and myths regarding Cannizzaro's health raises a fact issue with respect to whether Cannizzaro was regarded as having a substantially limiting impairment. Further limited discovery would allow Cannizzaro the opportunity to determine how widespread such attitudes were, as she believes that almost every local employee and most managers were aware of her sudden surgery." *Id.* at 16. Cannizzaro also states that additional discovery "should be allowed to develop the animus and stereotypes or illfounded perceptions which existed within the company regarding her medical condition." *Id.* at 20. Finally, in her affidavit, Cannizzaro's counsel attests: "I have interviewed several employees of Defendant, whom I believe will provide testimony favorable to Plaintiff. I have not been able to depose them or obtain affidavits from them. I believe it is imperative that plaintiff be given and [sic] opportunity to depose and cross-examine these individuals as some of them have prepared affidavits used by defendant in support of its motion." Affid. of Julie Johnson, ¶ 6.

The record indicates that on June 14, 1996, NM identified the witnesses Cannizzaro now seeks to depose in NM's initial disclosure and/or its interrogatory answers served on February 12, 1997. By agreement, the parties extended the original discovery deadline of February 12, 1997 to March 30, 1997 and finally to April 11, 1997. Counsel for Cannizzaro deposed Robin McBride on March 6, 1997. Affid. of Julie Johnson ¶ 5. Exhibit 8 attached to the excerpt of that Deposition is McBride's notes regarding Earnheart's alleged perception that Cannizzaro was disabled (see footnote 3).

Cannizzaro has not indicated to the Court why she has been unable to secure the desired witnesses' testimony under oath from, at the earliest, the time she informally interviewed the witnesses, and at the latest, March 6, 1997, when she was alerted to evidence arguably attributable to Earnh-

eart's alleged perception of Cannizzaro as disabled. Moreover, as NM points out, Cannizzaro does not indicate why she waited until her response to NM's motion was due to seek her continuance.

Finally, her counsel's affidavit does not indicate specifically which witnesses will provide what facts. Instead it appears to the Court, as NM argues, that Cannizzaro has "a generalized hope that cross-examination will yield evidence" needed to defeat summary judgment. Reply Brief, p. 8. The law does not require a continuance to conduct a fishing expedition. *Krim*, 989 F.2d at 1443. "[While] the . . . court should be generous in its allowance of discovery requests aimed at uncovering evidence of the moving party's state of mind, . . . [where] the nonmoving party has not diligently pursued discovery of that evidence, the court need not accommodate the nonmoving party's belated request." *International Shortstop*, 939 F.2d at 1267. Cannizzaro's lack of specificity coupled with the complete absence of explanation for her alleged inability to have obtained the needed testimony in what appears to be—and no party has contested this—a sufficient window of opportunity, leads the Court to the conclusion that the "just, speedy and inexpensive" determination of this action requires the Court to deny the continuance. *See Krim*, 989 F.2d at 1442.

### III. THE ADA

The ADA prohibits employers like NM from discriminating against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, hiring, advancement, or discharge of employees. 42 U.S.C. § 12112(a); *Turco v. Hoechst Celanese Chemical Group Inc.*, 101 F.3d 1090, 1092 (5th Cir.1996). "Qualified individual with a disability means an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, **can perform the essential functions** of such position." 29 C.F.R. § 1630.2(m)(emphasis added). "The term essential functions means

the fundamental job duties of the employment position the individual with a disability holds or desires. [It] does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). "Evidence of whether a particular function is essential includes, but is not limited to: (i) the employer's judgment as to which functions are essential; (ii) written job descriptions prepared before advertising or interviewing applicants for the job; (iii) the amount of time spent on the job performing the function; (iv) the consequences of not requiring the incumbent to perform the function; . . . (vi) the work experience of past incumbents in the job; and/or (vii) the current work experience of incumbents in similar jobs." 29 C.F.R. § 1630.2(n)(3).

### A. Otherwise Qualified Individual

"While the ADA focuses on eradicating barriers, the ADA does not relieve a disabled employee or applicant from the obligation to perform the essential functions of the job." *Foreman*, 113 F.3d at 1409. An otherwise qualified individual is "one who is able to meet all of a program's requirements **in spite of** [rather than "but for"] his handicap." *Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979)(interpreting Rehab. Act)(emphasis added); *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir.1993)(Rehab. Act). To determine whether an individual is otherwise qualified for a given job, the Court must conduct a two part inquiry. *Chandler*, 2 F.3d at 1393–94. First, it must determine whether the individual could perform the essential function of the job, i.e., functions that bear more than a marginal relationship to the job at issue. *Id.* Second, if (but only if) the Court concludes that the individual is not able to perform the essential functions of the job, it must determine whether any reasonable accommodation by the employer would enable the individual to perform those functions. *Id.* As with establishing the existence of a handicap, the burden lies with the plaintiff to show that he is otherwise qualified. *Id.*

An employee who states she can no longer do the job disqualifies herself. *See*

*Howard v. North Mississippi Medical Ctr.,* 939 F.Supp. 505, 509–10 (N.D.Miss.1996) ("It would be more than a little difficult for the court to interpret her dismissal as an adverse employment decision when Howard herself stated she could no longer do the job.").

### B. Disability

A "disability" includes "a physical or mental impairment that substantially limits one or more of the major life activities of such an individual; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C); *Turco,* 101 F.3d at 1092. "Physical impairment" includes "[a]ny physiological disorder or condition, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, ... cardiovascular, ... and hemic...." 29 C.F.R. § 1630.2(h)(1). "Is regarded as having an impairment" means that the plaintiff. "(1) [h]as a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation; (2)[h]as a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3)[h]as none of the impairments defined [in the regulations] but is treated by a covered entity as having a substantially limiting impairment." 29 C.F.R. § 1630.2(*l*)(1)-(3).

■ To establish a disability under the "regarded as" component of the ADA, the plaintiff must show that the employer "regarded him as being substantially limited in performing either a class of jobs or a broad range of jobs in various classes." *MacDonald v. Delta Air Lines, Inc.,* 94 F.3d 1437, 1445 (10th Cir.1996). "An employer does not necessarily regard an employee as having a substantially limiting impairment simply because it believes that she is incapable of performing a particular job; the statutory reference to a substantial limitation indicates instead than an employer regards an employee as substantially limited in his or her ability to foreclose generally the type of employment involved." *Foreman,* 113 F.3d at 1408; *Ellison v. Software Spectrum, Inc.,*

85 F.3d 187, 192 (5th Cir.1996); *Forrisi v. Bowen,* 794 F.2d 931, 934–35 (4th Cir.1986)(applying Rehab. Act).

"An employer's belief that an employee is unable to perform one task with an adequate safety margin does not establish per se that the employer regards the employee as having a substantial limitation on his ability to work in general." *Chandler,* 2 F.3d at 1393. In *Bridges v. City of Bossier,* 92 F.3d 329 (5th Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 770, 136 L.Ed.2d 715 (1997), the Court noted that "[t]he City rejected Bridges because it feared his condition rendered him a danger to himself and others as a firefighter." *Id.* at 331. The court of appeals affirmed the district court's finding that the City regarded Bridges as substantially limited in only a narrow range of jobs and, therefore, Bridges was not disabled under the ADA. *Id.* at 332–34.

■ "A person is 'regarded as having' an impairment that substantially limits the person's major life activities when other people treat that person as having a substantially limiting impairment." *Wooten,* 58 F.3d at 385–86. The focus is on the impairment's effect upon the attitude of others. *Id.* This provision is intended to combat the effects of 'archaic attitudes,' erroneous perceptions, and myths that work to the disadvantage of persons with or regarded as having disabilities. *Id.* The "regarded as" component of disability "is designed to protect against erroneous stereotypes some employers hold regarding certain physical or mental impairments that are not substantially limiting in fact." *Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 885 (6th Cir.1996). Under that provision, a "plaintiff must show that **the perceived impairment is a substantial limitation on a major life activity.**" *Id.* (emphasis added).

### C. Substantial Limitation

■ "Substantially limits ... means ... [u]nable to perform a major life activity that the average person in the general population can perform; or [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condi-

tion, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. §§ 1630.2(j)(1)(i)-(ii); *Robinson v. Global Marine*, 101 F.3d 35, 36 (5th Cir. 1996), *cert. denied* —— U.S. ——, 117 S.Ct. 1820, 137 L.Ed.2d 1028, 1997 WL 82005 (May 19, 1997). One whose impairment merely affects one or more major life activities is not disabled. *Barfield v. Bell South Telecommunications, Inc.*, 886 F.Supp. 1321, 1324 (S.D.Miss.1995). Factors to be considered in determining whether an individual is substantially limited in a major life activity include: "[t]he nature and severity of the impairment; (ii)[t]he duration or expected duration of the impairment; and (iii)[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2)(i)-(iii).

### D. Major Life Activities

"Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); *Robinson*, 101 F.3d at 36. Other major life activities could include lifting, reaching, sitting or standing. 29 C.F.R. § 1630, Appendix to Part 1630—Interpretive Guidance on Title I of the [ADA] § 1630.2(1); *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir.1995).

To determine whether a person is substantially limited in a major life activity other than working, courts look to whether that person can perform the normal activities of daily living. *Dutcher*, 53 F.3d at 726. *Dutcher* makes clear that inability to perform [a] discrete task does not render a person substantially limited in a major life activity. *Id.; Ray v. Glidden Co.*, 85 F.3d 227, 229 (5th Cir.1996).

■ "With respect to the major life activity of working ... [t]he term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job

does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i); *Ellison*, 85 F.3d at 190; *Maulding v. Sullivan*, 961 F.2d 694, 698 (8th Cir.1992), *cert. denied*, 507 U.S. 910, 113 S.Ct. 1255, 122 L.Ed.2d 653 (1993). "Working" under the ADA "does not mean working at a particular job of that person's choice." *Wooten v. Farmland Foods*, 58 F.3d 382, 385–86 (8th Cir.1995). Nor is an individual "substantially limited in working just because he or she is unable to perform a particular job for one employer...." *Foreman*, 113 F.3d at 1407.

"The following factors may be considered in determining whether an individual is substantially limited in the major life activity of 'working': (A) The geographical area to which the individual has reasonable access; (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes)." 29 C.F.R. § 1630.2(j)(3)(ii)(A)–(C).

The EEOC's Interpretive Guidelines proclaim that an individual's ability to perform the major life activity of working should only be considered if the individual is not substantially limited in any other major life activity. 29 C.F.R. Part 1630, Appendix § 1630.2(j); *Barfield*, 886 F.Supp. at 1324.

### E. Discrimination

■ "[T]he term 'discrimination' includes limiting, segregating or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the **disability** of such applicant or employee." 42 U.S.C. § 12112(b)(1)(emphasis added). Discrimination under the ADA includes also

"not making reasonable accommodations to the known physical or mental limitations of an **otherwise qualified individual** with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A)(emphasis added). "Reasonable accommodation means ... [m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position...." 29 C.F.R. § 1630.2(o)(1)(i)–(ii). "Reasonable accommodation may include but is not limited to ... [m]aking existing facilities used by employees readily accessible to and usable by individuals with disabilities; and [j]ob restructuring; part–time or modified work schedules; reassignment to a vacant position; [and] acquisition or modifications of equipment or devices...." 29 C.F.R. § 1630.2(o)(2)(i)–(ii). The ADA does not require an employer to promote a disabled employee, nor must an employer reassign the employee to an occupied position, or to create a new position to accommodate the disabled worker. *Chiari v. City of League City*, 920 F.2d 311, 318 (5th Cir.1991)(Rehabilitation Act case); *Munoz v. H & M Wholesale, Inc.*, 926 F.Supp. 596, 608 (S.D.Tex.1996). NM is not required to "bump" other employees to create a vacancy so as to reassign Cannizzaro. *See Weiler v. Household Fin. Corp.*, 101 F.3d 519, 526 (7th Cir.1996). Nor is it required to hire Cannizzaro over more qualified applicants. *Sharpe v. American Tel. & Tel. Co.*, 66 F.3d 1045, 1051(9th Cir.1995). Nor is it required to alter its job placement procedures. *See Daugherty v. City of El Paso*, 56 F.3d 695, 700 (5th Cir.1995), *cert. denied*, — U.S. ——, 116 S.Ct. 1263, 134 L.Ed.2d 211 (1996). "In short, the ADA does not require affirmative action in favor of individuals with disabilities.... [Instead] it prohibits discrimination against qualified individuals with disabilities, no more and no less." *Id.*

 Moreover, the duty to make a reasonable accommodation arises only when the individual is disabled; no such duty arises when the individual merely is "regarded as" being disabled as defined under the ADA. *See Howard v. Widnall*, EEOC Appeal No. 01931095, 1994 WL 747979 (E.E.O.C.), at 5 (1994); Equal Employment Opportunity Commission, *ADA Case Study Training: Trainers Manual*, Case Study 1, at 6 (1996)

## IV. APPLICATION TO FACTS

 To survive NM's summary judgment motion, Cannizzaro must meet the threshold burden of establishing that she is disabled under the statute. *Roth v. Lutheran General Hosp.*, 57 F.3d 1446, 1454 (7th Cir.1995); *Schluter v. Industrial Coils, Inc.*, 928 F.Supp. 1437, 1443 (W.D.Wis.1996). To do so she must show she is an otherwise qualified individual with a disability or that NM regarded her as having an impairment that substantially limited one or more of her major life activities. *Foreman*, 113 F.3d at 1407; *Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir.1996).

### A. Qualified Individual With a Disability

 Cannizzaro contends she is disabled because she is substantially limited in one or more major life activities, including working. In the alternative, she contends that she is disabled because NM regarded her as being substantially limited in one or more major life activities, including working. As purported evidence to support her status, Cannizzaro relies in part on the fact that "Cannizzaro's doctors have been and continue to be **uncertain** of Cannizzaro's future risk of a continuing or recurrent brain ailment"; that she "**has never been told** by any physician that she will ever be able to regain [the abilities to bend, lift and fly]" and "there remains **no way to know** whether Cannizzaro's condition will deteriorate or recur." (emphasis added). The Court finds that these statements do not constitute evidence of the inverse meaning ascribed to them by Cannizzaro; i.e., they do not establish that Cannizzaro will suffer a continuing or recurrent brain ailment and/or that her condition will deteriorate. Nor do the statements establish that Cannizzaro has been told she will **not** ever regain her abilities to bend, lift and fly.

**476**

Therefore, particularly in light of Dr. Finn's diagnosis that Cannizzaro is asymptomatic and "back to normal," the Court finds that these speculative statements do not raise a genuine issue of material fact regarding any alleged long-term impact or permanent duration of Cannizzaro's "brain ailment."[4] Notwithstanding the foregoing, the Court finds the statements to be no evidence of disability because bending, lifting, and flying are not major life activities under the ADA, and, as discussed below, Cannizzaro's lifting restrictions do not foreclose generally her ability to work in a class of jobs or a broad range of jobs in various classes.

▮ Moreover, Cannizzaro has failed to provide evidence establishing she is qualified to perform the essential functions of the positions for which she interviewed. To the extent that any of the positions required Cannizzaro to perform essential functions from which she was medically restricted, and those positions could not be restructured to accommodate or eliminate the restrictions, Cannizzaro was not a qualified applicant. See *Foreman,* 113 F.3d at 1410; *Howard v. North Mississippi Medical Ctr.,* 939 F.Supp. 505, 509–10 (N.D.Miss.1996); *Wann v. American Airlines,* 878 F.Supp. 82, 85 (S.D.Tex.1994), *aff'd,* 58 F.3d 636 (5th Cir.1995). Cannizzaro has not established, position by position, that she was qualified to perform each job's essential functions. See Appendix A. Instead, she offers conclusory statements regarding her qualification. Moreover, she admits that she was not qualified for the Internal Accounts Payable position due to lack of training in accounting, and for "a few positions" due to her physical limitations. Cannizzaro Depo. pp. 114–15; Pl. Opp. to Def. MSJ pp. 6, 17.

### (1) Substantial Limitation of a Major Life Activity Other Than Working

▮ To establish that she is disabled, Cannizzaro must prove that her impairment has substantially limited a major life activity. She alleges that, due to her impairment, Cannizzaro is substantially limited in her ability to "lift, bend and fly". Flying is not listed as a major life activity under the regulations. *See* 29 C.F.R. § 1630.2(i). Cannizzaro does not cite any case law recognizing it as such under the ADA. Regarding lifting and bending, the case law indicates that such activity involves the performance of a discrete task insufficient, without more, to establish a disability under the ADA. *See Glidden,* 85 F.3d at 229; *Dutcher,* 53 F.3d at 726. Instead, the Court is to determine whether Cannizzaro "can perform the normal activities of daily living." *Id.* NM argues, and the evidence supports, that Cannizzaro's impairment has not substantially limited her lifestyle. Cannizzaro has gone on a 10–day honeymoon and several weekend trips with her husband and she participates in recreational and social activities. Cannizzaro Depo. pp. 24–26. Moreover, the stringent restrictions placed on Cannizzaro originally appear to have been temporary. As a result, the restrictions which the Court reviews are those placed upon her when she returned to work. The Court finds these are not substantially limiting as contemplated by the ADA.

### (2) Substantial Limitation of Major Life Activity of Working

Cannizzaro contends that her restrictions substantially limit her ability to work, particularly in the retail industry. However, she provides no evidence indicating how she is, in fact, limited in her ability to work. She has not shown that she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *See* 29 C.F.R. § 1630.2(j)(3)(i). Nor has she provided any evidence regarding the essential functions of the various jobs available within the retail industry. As has been already stated, "the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.; Ellison,* 85 F.3d at 190. Based on the foregoing, the Court finds Cannizzaro is not

---

**4.** Nor is there any evidence before the Court to support Cannizzaro's contention that "the limitations placed upon her in April of 1995 will be lifelong as a result." Indeed, the very evidence offered by Cannizzaro to suggest the permanency of her condition supports it temporariness.

a qualified individual with a disability as contemplated by the ADA, and summary judgment is granted in NM's favor on that count.

### B. Retarded As Being Disabled

Cannizzaro contends that NM failed to hire her into any of the positions for which she interviewed because it regarded her as being disabled. She makes various statements allegedly in support of her contention. See footnote 3 *supra.* The Court finds that the only statements which merit discussion as summary judgment evidence of NM's perception of Cannizzaro are the allegedly repeated questions from unspecified interviewers about her brain condition during the interviews, and the comment attributed to Earnheart that he allegedly was not interested in hiring Cannizzaro for the Sales Coordinator position "for her sake" because he felt "the job would kill her." [5]

### 1. Questions Regarding Restrictions

■ The ADA allows employers to inquire into an employee's ability to perform job-related functions. 42 U.S.C. § 12112(d)(4)(B); 29 C.F.R. § 1630.14(c). *See also Miranda v. Wisconsin Power & Light Co.,* 91 F.3d 1011; 1017 (7th Cir.1996). As a result, the fact that some of the interviewers may have discussed Cannizzaro's impairment with her, particularly in light of the restrictions placed upon her return to work, is not evidence that NM unlawfully discriminated against Cannizzaro based on a perception that she was disabled.[6] When an employer terminates [or arguably doesn't hire] an employee based upon physical restrictions imposed by the employee's doctor, the decision alone does not indicate that the employer regards the employee as having a substantially limiting impairment. *See Wooten,* 58 F.3d at 385–86. In *Wooten,* the evidence bearing on Farmland Foods' perception of Wooten's impairment indicated that its perception was not based upon speculation, stereotype, or myth, but upon a doctor's written restriction of Wooten's physical abilities. *Id.* Hence, "Farmland Foods' decision to terminate Wooten based upon the physical restrictions imposed by his doctor, when no jobs accommodating those restrictions were currently available, does not indicate that Farmland Foods regarded Wooten as having a substantially limiting impairment." *Id.*

### 2. Earnheart's Motive

■ Inasmuch as the evidence indicates that the interviewers were hiring managers for specific positions only, any evidence regarding their alleged perception of Cannizzaro arguably would be limited to her ability or inability to perform the specific jobs for which they were interviewing. This includes Earnheart, whose alleged statement appears to corroborate that limitation—it was "the job" he felt would kill her. Without more, this statement—constituting at best a mere scintilla of evidence that NM was motivated by archaic attitudes, and/or erroneous perceptions, myths or stereotypes regarding Cannizzaro's condition—does not raise a genuine issue that NM regarded Cannizzaro as being substantially limited in performing either a class of jobs or a broad range of jobs in various classes.

Taking the record as a whole, the Court finds that Cannizzaro has failed to raise a genuine issue of material fact for trial She has provided no testimony that Earnheart asked her about her medical condition, or that he commented to her about her illness in any way. The evidence shows that Cannizzaro told NM's managers about her illness and condition. The evidence provides *no context* for Earnheart's remark—which is related by a third person—and it is not possible to tell from the remark that he considered Cannizzaro disabled in general and thus unable to work, rather than simply believing her incapable of handling the specific job for which he was interviewing candidates. Without more, a genuine issue of material fact for the jury

---

5. The Court finds the remaining statements to be mere conclusions, which are not evidence, or evidence not relevant to or which fails to raise a genuine issue of material fact regarding NM's purported perception of Cannizzaro as disabled.

6. NM points out that on many occasions, it was Cannizzaro who raised the issue of her medical condition. See Cannizzaro Depo. p. 113; Lara Decl.. ¶ 4; Krug Decl.. ¶ 4; Wetterau Decl.. ¶ 4.

has not been presented. Defendant is entitled to judgment in its favor on this count.

### C. Discrimination

Cannizzaro complains of two types of discrimination against her under the ADA. First, that NM failed to make a reasonable accommodation for the "known and/or perceived disability" of Cannizzaro. Pl. Compl. p. 9. Second, by adversely affecting her employment opportunities with NM because of her disability in various ways, set out specifically below. Pl. Compl. pp. 10–11.

#### 1. Reasonable Accommodation

■ The Court has found that Cannizzaro is not disabled, so no reasonable accommodation by NM would have been required. Notwithstanding this finding, there is no evidence that NM could make a reasonable accommodation without eliminating the essential functions of the jobs requiring Cannizzaro to lift and bend, something it is not required to do. *Jasany v. United States Postal Serv.*, 755 F.2d 1244, 1250 (6th Cir. 1985); *Wann,* 878 F.Supp. at 85. There is no evidence before the Court that vacant positions for which Cannizzaro was qualified and whose essential functions did not conflict with Cannizzaro's physical restrictions even existed. *See Wooten,* 58 F.3d at 384. Cannizzaro argues also that NM failed to accommodate her by failing to modify her "work schedule" to accommodate her medical restrictions, and by failing to "conduct job restructuring so as to allow Cannizzaro to return to work." Pl. Compl. p. 9. She provides no evidence, however, that her requests were reasonable or possible.[7] The burden is on

Cannizzaro to show that a reasonable accommodation is possible.[8] *Chandler,* 2 F.3d at 1394. Moreover, according to the law, NM did make a reasonable accommodation by interviewing her and considering her for vacant positions. *Weiler,* 101 F.3d at 526; *Sharpe,* 66 F.3d at 1050–51; *Howard,* 939 F.Supp. at 510.

#### 2. Discriminatory Conduct

The ADA prohibits NM from "limiting, segregating or classifying" Cannizzaro "in a way that adversely affects" her opportunities or status "because of the disability" of Cannizzaro. 42 U.S.C. § 12112(b)(5)(A). The Court has found Cannizzaro not to be a qualified individual with a disability. Moreover, Cannizzaro has failed to raise a genuine issue of material fact that NM regarded her as having an impairment that substantially limits one or more of her major life activities. As a result, NM is entitled to judgment in its favor on this count.

### V. STATE LAW CLAIMS

#### A. Negligence

■ NM argues that Cannizzaro's state law claims for negligent training, negligent supervision and negligent retention fail because they are preempted by the Texas Commission on Human Rights Act; are barred by the exclusive remedy provision of the Texas Worker's Compensation Act; and/or are not recognized as a matter of law in Texas where the alleged misconduct involves discriminatory treatment. NM has cited the court to an abundance of law in support of its contentions.[9] Cannizzaro has not responded

---

7. The Court is hard-pressed to conceive how modifying Cannizzaro's work schedule would accommodate her weight-lifting, bending and flying restrictions.

8. Cannizzaro attempts unsuccessfully to shift her burden onto NM when she argues that "NM has not been able to assert that other positions [for which Cannizzaro allegedly was qualified] did not exist or were not open." Pl. Opp. to Def. MSJ p. 18.

9. *See e.g., Cook v. Fidelity Investments,* 908 F.Supp. 438, 442 (N.D.Tex.1995)(preempting negligent supervision claim); *Bates v. Humana, Inc.,* 1993 WL 556416, 63 Fair Empl. Prac. Cas.

(BNA) 327, 336 (W.D.Tex.1993)(negligence claim based on alleged discriminatory treatment preempted by TCHRA); *Vincent v. West Tex. State Univ.,* 895 S.W.2d 469, 473–74 (Tex.App.—Amarillo 1995, no writ)(TCHRA preempts suits for discrimination brought under other legal theories); *Stinnett v. Williamson County Sheriff's Dept.,* 858 S.W.2d 573, 577 (Tex.App.—Austin 1993, writ denied)(same). *See also* TEX. LAB. CODE §§ 406.034(a) & 408.001(a); *Ward v. Bechtel Corp.,* 102 F.3d 199, 203–04 (5th Cir.1997)(preempting premises liability and negligent hiring, retention, and supervision claims); *Barber v. Nationwide Communications, Inc.,* No. 3:95–CV–0656–H, slip op. at 9–10 (N.D.Tex. 1995); *Ajaz v. Continental Airlines,* 156 F.R.D.

in opposition thereto. The Court is persuaded by the arguments presented and finds they are supported by the law cited. Therefore, summary judgment is granted in favor of Defendant on Cannizzaro's .negligence-based state law causes of action.

### B. Emotional Distress

 NM argues that Cannizzaro has failed to establish her entitlement to recovery for intentional infliction of emotional distress because such an action is preempted by the Texas Commission on Human Rights Act; is barred by the exclusive remedy provision of the Texas Workers' Compensation Act; and/or are wholly unsupported by competent summary judgment evidence establishing that the alleged conduct was "extreme and outrageous" or that Cannizzaro suffered "severe" emotional distress. Cannizzaro has not responded in opposition thereto. As already noted, the Court finds the law cited by NM supports its preemption and exclusive remedy arguments. After reviewing the record, the Court agrees that no competent summary judgment evidence has been adduced to establish that NM's conduct was

"extreme and outrageous" or that Cannizzaro suffered "severe" emotional distress as contemplated by applicable law.[10] Summary judgment is, therefore, granted in Defendant's favor on that count.

### VI. CONCLUSION

Based on the foregoing, the Court finds that Plaintiff has failed to establish her entitlement to a continuance, has failed to establish one or more elements of her causes of action under 42 U.S.C. §§ 12102(2)(A), 12112(b)(5)(A), 12102(2)(C) and 12112(a) & (b)(1), and has failed to establish any of her state law causes of action.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that Plaintiff's Motion for Continuance is **DENIED;** that Defendant's Motion for Summary Judgment is **GRANTED;** that **JUDGMENT** be entered in favor of Defendant that Plaintiff take nothing in all actions against Defendant, that Defendant be awarded its just and reasonable costs pursuant to Federal Rule of Civil Procedure 54(d)(1) and that Cause No. 3:96–CV–0934–P is hereby **CLOSED.**

145, 149 (S.D.Tex.1994)(negligent hiring claim preempted by exclusive remedy provision); *Arnold v. Texas Eastman Co.,* No. 2:92–CV–0095, slip op. at 7 (E.D.Tex. July 2, 1993); *Rodriguez v. Naylor Indus., Inc.,* 763 S.W.2d 411, 412 (Tex. 1989); *Reed Tool Co. v. Copelin,* 689 S.W.2d 404, 406 (Tex.1985); *Horton v. Montgomery Ward & Co.,* 827 S.W.2d 361, 364–66, 370 (Tex.App.— San Antonio 1992, writ denied); *Zavala–Nava v. A.C. Employment, Inc.,* 820 S.W.2d 14, 15 (Tex. App.—Eastland 1991, writ denied); *Estate of Arrington v. Fields,* 578 S.W.2d 173, 178 (Tex.Civ. App.—Tyler 1979, writ ref'd n.r.e.).

**10.** *See, e.g., Johnson v. Merrell Dow Pharmaceuticals, Inc.,* 965 F.2d 31, 33–34 (5th Cir.1992)(per curiam); *Wilson v. Monarch Paper Co.,* 939 F.2d 1138, 1143 (5th Cir.1991)(citing *Restatement (Second) of Torts* § 46 comment d (1965)); *Johnson v. Hines Nurseries,* 950 F.Supp. 175 (N.D.Tex.1996)(employer's alleged failure to ac-

commodate plaintiff's disability, callous remarks regarding plaintiff's condition, and mocking comments about plaintiff's speech not extreme and outrageous); *Badgett v. Northwestern Resources Co.,* 818 F.Supp. 998, 1003 (W.D.Tex. 1993); *Rayburn v. Equitable Life Assurance Society,* 805 F.Supp. 1401, 1410 (S.D.Tex.1992); *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995); *Wornick Co. v. Casas,* 856 S.W.2d 732, 734 (Tex.1993); *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993); *Farrington v. Sysco Food Servs., Inc.,* 865 S.W.2d 247, 254 (Tex.App.—Houston [1st Dist.] 1993, writ denied)(termination itself insufficient to state a claim for intentional infliction of emotional distress in Texas); *Benavides v. Moore,* 848 S.W.2d 190, 195 (Tex.App.—Corpus Christi 1992, writ denied); *K.B. v. N.B.,* 811 S.W.2d 634, 640 (Tex.App.—San Antonio 1991, writ denied), *cert. denied,* 504 U.S. 918, 112 S.Ct. 1963, 118 L.Ed.2d 564 (1992).

## APPENDIX A

| Position | Interviewer | Stated Reasons |
|---|---|---|
| 1) Internal Accounts Payable Auditor | Bruce Carrico | Cannizzaro ("C") and Carrico agreed C lacked necessary qualifications; also C not interested; salary was below C's current pay.<br><br>No discussion of C's medical condition. |
| 2) Import Buyer | Rose Lara | Much travel to Far East required and lifting boxes weighing up to 40 lbs.; C expressed concern because of medical restrictions placed on her and informed Lara of same. |
| 3) Workbench Analyst | Liz Beatty | Beatty considered C overqualified; concerned C would be unchallenged and bored; found C inflexible for position.<br><br>No discussion of medical condition during interview. |
| 4) Manager of Executive Recruitment | Mary Krug | Required extensive travel and carrying materials; C informed Krug of her restrictions re: lifting, but not flying; Krug chose another applicant because had strongest track record; also better personality for job ("driven").<br><br>Krug testified medical condition didn't play role in decision. Krug didn't believe carrying materials would pose problem. |
| 5) Sales Coordinator | Bill Earnheart | Selected another applicant who was an asst. buyer because had recently been faced with same problems currently in department; other applicant convinced Earnheart she could immediately solve organizational and follow-up problems; other applicant appeared extremely enthusiastic and eager, unlike C, who didn't appear overly enthusiastic.<br><br>Earnheart claims not to recall any discussion of C's medical condition or health and claims they did not play a role in his decision. |

| | | |
|---|---|---|
| 6) Asst. Silver Buyer | Annette Kahn Webster | Position did not become vacant. |
| 7) Clearance Division Administrator | Krista Wetterau | Overnight travel, lifting, moving heavy trolleys and merchandise weighing 25–30 lbs., pulling and pushing required; C informed Wetterau of restrictions and said would have to check with doctor; Wetterau chose another applicant because had worked with shoes, which comprised 1/3 of all clearance merchandise; also, other applicant knew how to use computer system. |
| | | Contends that C's need to speak with doctor did not factor into decision. |