MEMORANDUM OPINION AND ORDER
 

 CUMMINGS, District Judge.
 

 On this day, the Court considered De-fendanVThird-Party Plaintiff Hydroblast Corporation’s (“Hydroblast”) Motion for Partial Summary Judgment with Respect to Its Claim Against Third-Party Defendant, Fireman’s Fund Insurance Company, filed on March 26, 1999. On April 21, 1999, Third-Party Defendant Fireman’s Fund Insurance Company (“FFIC”) filed its Response. On May 10, 1999, Hydrob-last filed its Reply.
 
 [1]
 
 Having considered all of the relevant arguments and evidence, the Court is of the opinion that Hydrob-last’s Motion for Partial Summary Judgment and application for a declaratory judgment should be DENIED.
 

 Also on this day, the Court considered FFIC’s Cross-Motion for Summary Judgment Against Hydroblast and Plaintiff Amoco Production Company (“Amoco”) as Real Party in Interest, filed on April 21, 1999. On May 10, 1999, Hydroblast filed its Response. FFIC filed its Reply on May 25, 1999. Having considered all of the relevant arguments and evidence, the Court is of the opinion that FFIC’s Cross-Motion for Summary Judgment and application for a declaratory judgment should be GRANTED.
 

 The Court also considered Third-Party Defendants Daniels Insurance Agency, Inc. (“Daniels Insurance”) and John Arnold’s Motion for Summary Judgment, filed on July 15,1999. On August 3, 1999, Third-Party Plaintiff Hydroblast filed its Response. Daniels Insurance and Arnold did not file a Reply. Having considered all of the relevant arguments and evidence, the Court is of the opinion that Daniels Insurance and Arnold’s Motion for Summary Judgment should be GRANTED.
 

 I. Background
 

 This is a declaratory judgment action which is being prosecuted by Amoco through an assignment of claims by Hy-droblast.
 
 [2]
 
 This action arises from a June 1994 incident in which Gilbert Ybarra and Michael Bounds, employees of Hydroblast, were injured while working at Amoco’s C02 recovery plant located near the town of Sundown in Hockley County, Texas.
 

 The operation of the C02 plant required the use of Selexol,
 
 [3]
 
 a cleaning solvent manufactured by Union Carbide Corporation, which maximizes C02 extraction. In June 1994, Amoco contracted with Hydroblast to conduct pressure tests on Amoco’s Se-lexol-filled heat exchangers to determine the presence of any leaks. Hydroblast sent some of its employees, including
 
 *730
 
 Ybarra and Bounds, to Amoco’s Sundown plant to conduct the pressure tests on the heat exchangers. While Hydroblast employees were pressure-checking the heat exchangers, Selexol was blown from tubes connected to the heat exchangers, drenching Ybarra and Bounds.
 

 In July 1996, Ybarra and Bounds filed suit in the United States District Court, District of New Mexico, against Amoco and Union Carbide for alleged personal injuries caused by their exposure to Selex-ol.
 
 [4]
 
 Following receipt of Ybarra and Bound’s Complaint, Amoco requested that Hydroblast take over the defense and indemnify Amoco for the claimed injuries. Amoco made its request for indemnity pursuant to a Well and Lease Service Master Contract (“Master Contract”) which Amoco and Hydroblast entered into in 1993.
 

 Under Paragraph 10 of the Master Contract, Hydroblast agreed to defend, indemnify, and hold Amoco harmless from any suit against it by Hydroblast employees working at the Amoco plant. Prior to approval of the Master Contract, Amoco required Hydroblast to procure certain insurance. Under Paragraph 11, Hydrob-last agreed to secure and maintain during the term of the agreement comprehensive general liability insurance. Hydroblast subsequently purchased two policies from Third-Party Defendant Daniels Insurance through Daniels Insurance employee, Third-Party Defendant John Arnold. Both policies were underwritten by Third-Party Defendant FFIC.
 
 [5]
 
 Shortly after Daniels Insurance provided Amoco with a certificate of insurance on Hydroblast, Amoco approved the Master Contract.
 

 Following the Sundown plant incident, Hydroblast did not agree to indemnify or take over the defense of Amoco in the Ybarra and Bounds litigation as required by the provisions of the Master Contract. In 1997, Amoco sued Hydroblast in Hock-ley County, Texas, seeking a declaratory judgment that Hydroblast was obligated to defend and indemnify Amoco in the Ybarra and Bounds lawsuit. Amoco also sought a declaratory judgment that Hydroblast had breached Paragraph 11 of the Master Contract requiring Hydrobl'ast to secure and maintain comprehensive general liability insurance.
 

 In the state court action, Hydroblast, as Third-Party Plaintiff, filed third-party claims against FFIC, Daniels Insurance, and John Arnold. Specifically, Hydroblast sought a declaratory judgment that FFIC had breached the contract of insurance obligating it to furnish a defense to Amoco under the comprehensive liability provisions of the policies. Hydroblast also sought a declaration that FFIC was obligated to pay any judgment entered or settlement agreed to in the Ybarra-Bounds litigation.
 

 FFIC contends that it is not obligated to defend Amoco or pay any judgment or settlement because the indemnity agreement in the Master Contract between Amoco and Hydroblast is not covered due to the operation of a pollution-exclusion endorsement contained in the general liability policy. The specific language of the pollution exclusion provides:
 

 This insurance does not apply to:
 

 Hi jH # #
 

 f. (1) Bodily injury, property damage, or personal injury which would not have occurred in whole or in part but for the actual, alleged or threatened existence, discharge, dispersal, seepage, migration, release or escape of pollutants.
 

 The pollution exclusion further provides:
 

 Pollutants means one or more man-made or naturally occurring solid, liquid, gaseous or thermal irritant or contaminant including but not limited to smoke,
 
 *731
 
 vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes material to be recycled, reconditioned or reclaimed.
 

 FFIC contends that it also denied coverage because Amoco was neither a named insured nor an additional insured under the FFIC policies.
 
 [6]
 

 In its Motion for Partial Summary Judgment, Hydroblast asks the Court to declare that: (1) FFIC is obligated to defend Amoco as an additional insured in the Ybarra and Bounds litigation; and (2) FFIC is obligated under its policy to pay any judgment entered or settlement agreed upon, up to policy limits, in the Ybarra and Bounds litigation. Conversely, FFIC seeks a declaration that (1) it has no obligation to defend or indemnify Amoco in the Ybarra and Bounds action; (2) it has no obligation to indemnify or reimburse Hydroblast for any costs or expenses, including any defense or indemnity costs which Hydroblast might owe to Amoco as a result of any indemnity agreement entered into between Hydroblast and Amoco; and (3) Hydroblast is not entitled to attorney’s fees in the prosecution of this action.
 

 In its third-party claims against Daniels Insurance and Arnold, Hydroblast alleged that Daniels Insurance and Arnold breached an express or implied agreement by failing to procure the listing and naming of Amoco as an additional insured under the policies underwritten by FFIC. Hydrob-last also asserted that Daniels Insurance and Arnold were liable under the Texas Deceptive Trade Practices Act (“DTPA”) and the Texas Insurance Code. Daniels Insurance and Arnold removed the present action to this Court on the basis of diversity jurisdiction.
 

 In their Motion for Summary Judgment, Daniels Insurance and Arnold contend that there is no evidence of an express or implied agreement between Hydroblast, Daniels Insurance, and Arnold in which pollution coverage was to be included in the FFIC policies. Daniels Insurance and Arnold also assert that Hydroblast cannot maintain claims under the DTPA and the Texas Insurance Code because none of the operative facts regarding the insurance transactions between them took place in Texas; therefore, according to Daniels Insurance and Arnold, under the choice-of-law rules, New Mexico law should govern.
 

 II. Summary Judgment Standard
 

 Summary judgment is appropriate only if “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,” when viewed in the light most favorable to the non-movant, “show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.”
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is “genuine” if the evidence is such that a reasonable jury could return a verdict for the non-moving party.
 
 Id.
 
 at 248, 106 S.Ct. 2505. In making its determination, the court must draw all justifiable inferences in favor of the non-moving party.
 
 Id.
 
 at 255, 106 S.Ct. 2505. Once the moving party has initially shown “that there is an absence of evidence to support the non-moving party’s cause,”
 
 Celoiex Corp. v. Catrett,
 
 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the non-movant must come forward, after adequate time for discovery, with “specific facts” showing a genuine factual issue for trial. Fed.R.Civ.P. 56(e);
 
 Matsushita Elec. Indus. Corp. v. Zenith Radio,
 
 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Conclusory allegations and denials, speculation, improbable
 
 *732
 
 inferences, unsubstantiated assertions, and legalistic argumentation are not adequate substitutes for specific facts showing that there is a genuine issue for trial.
 
 Douglass v. United Servs. Auto. Ass’n,
 
 79 F.Bd 1415, 1429 (5th Cir.1996) (en banc);
 
 SEC v. Recile,
 
 10 F.3d 1093, 1097 (5th Cir.1993).
 

 In reviewing the summary judgment evidence, the Court has no duty to search the record for triable issues; rather, it need rely only on those portions of the submitted documents to which the nonmoving party directs its attention.
 
 See Dean v. Methodist Hospitals of Dallas,
 
 1998 WL 826882 (N.D.Tex.);
 
 see also Cannizaro v. Neiman Marcus, Inc.,
 
 979 F.Supp. 465, 470 (N.D.Tex.1997) (holding that the court has no duty to search for triable issues). Finally, in those circumstances where the non-movant fails to file a response, the Court may accept as true all of the mov-ant’s undisputed facts.
 
 See Tutton v. Garland Indep. Sch. Dist.,
 
 733 F.Supp. 1113, 1117 (N.D.Tex.1990).
 

 III. Discussion
 
 A. Hydroblast v. FFIC
 

 In Texas, insurance contracts are subject to the same rules of construction as other contracts.
 
 Constitution State Ins. Co. v. Iso-Tex Inc.,
 
 61 F.3d 405, 407 (5th Cir.1995) (citing
 
 Forbau v. Aetna Life Ins. Co.,
 
 876 S.W.2d 132, 133 (Tex.1994)). If an insurance policy is worded so that it can be given only one reasonable construction, it will be enforced as written.
 
 Iso-Tex,
 
 61 F.3d at 407 (citing
 
 State Farm, Fire & Cas. Co. v. Reed,
 
 873 S.W.2d 698, 699 (Tex.1993)). However, if the insurance contract is susceptible to more than one reasonable interpretation, the Court should interpret the contract strictly against the drafter by adopting the construction that most favors the insured and permits recovery.
 
 Id.
 
 Mere disagreement by the parties as to the meaning of a provision of an agreement does not create an ambiguity.
 
 REO Indus, v. Natural Gas Pipeline Co.,
 
 932 F.2d 447, 453 (5th Cir.1991).
 

 In
 
 Certain Underwriters at Lloyd’s London v. C.A. Turner Constr. Co.,
 
 112 F.3d 184 (5th Cir.1997), the Fifth Circuit evaluated a pollution exclusion similar to the one before the Court.
 
 [7]
 
 The Fifth Circuit held that under Texas law, a pollution-exclusion clause that denied liability insurance coverage for all damage caused by pollution, contamination, or seepage precluded coverage for a workplace accident which occurred when phenol gas escaped from a pipe that workers were welding, even though the release was confined to a small area.
 
 Id.
 
 The phenol gas contaminated the air inside a tent enclosing the scaffolding on which the workers were working.
 
 Id.
 
 Hydroblast’s argument, similar to that advanced by the plaintiff in
 
 C.A. Turner Construction,
 
 is that a clear distinction exists between “traditional environmental pollution” and a “simple workplace accident.” Specifically, Hydroblast argues that the pollution exclusion at issue does not apply because the purpose of such an exclusion is to exclude claims against an insured in eases of extensive “environmental-type” pollution, not a workplace accident involving injuries to an employee by a chemical used for the purpose for which it was manufactured. The Fifth Circuit rejected this argument and held that such exclusions “preclude coverage of liability arising out of releases that do not cause widespread environmental harm.”
 
 Id.
 
 at 187.
 

 As with the pollution exclusion in
 
 C.A. Turner Construction,
 
 the pollution exclusion before the Court does not limit its application to only those discharges causing environmental harm; in contrast, it speaks broadly of liability for
 
 any
 
 bodily or personal injury.
 
 Id.
 
 at 188. The language of the pollution exclusion is unam
 
 *733
 
 biguous and does
 
 not
 
 support a distinction between environmental pollution and workplace contamination. Hydroblast’s argument ignores the plain language of the exclusion, which denies coverage for bodily and personal injury “which would not have occurred but for the ... discharge, ... release or escape of pollutants.” In this case, Ybarra and Bounds’ alleged injuries stemmed from the discharge of Selexol, a chemical which clearly falls under the definition of “pollutant” in the insurance contract. The Court is satisfied that “but for” the discharge of Selexol at Amoco’s Sundown plant, albeit an isolated discharge, Ybarra and Bounds would not have received their alleged injuries. The Court finds that the pollution exclusion is clear, unambiguous, and contains no patent or latent ambiguity. Accordingly, coverage is excluded for the personal injuries alleged in the Ybarra-Bounds litigation. The Master Contract between Amoco and Hy-droblast provides no other basis for implying that FFIC has an obligation to insure against the damages suffered by Amoco, if any. Therefore, the Court finds that FFIC has neither a duty to defend nor a duty to indemnify Amoco or Hydroblast for any judgment, settlement, or costs related to the Ybarra-Bounds litigation.
 

 Hydroblast’s Motion for Partial Summary Judgment and application for a declaratory judgment is DENIED. FFIC’s Cross-Motion for Summary Judgment and application for a declaratory judgment is GRANTED. In its discretion, the Court is of the opinion that no attorney’s fees shall be awarded.
 
 [8]
 

 B. Hydroblast v. Daniels Insurance and John Arnold
 

 1. Breach of Express or Implied Agreement Claim
 

 Hydroblast’s Third-Party Complaint alleges that Daniels Insurance and Arnold breached their express or implied agreement with Hydroblast to procure all insurance required by Hydroblast undpr terms of the Master Contract.
 
 [9]
 
 In their Motion for Summary Judgment, Daniels Insurance and Arnold contend that no such agreement existed; however, they assert that if one did exist, then the terms of the agreement were fulfilled. The Court agrees.
 

 On July 22, 1992, Hydroblast purchased the original commercial package policy. On October 1, 1992, Hydroblast purchased the umbrella and excess policy, scheduling the commercial package policy. The policies, both containing the pollution exclu
 
 *734
 
 sion, provided the requisite amounts of coverage under the Master Contract. On December 28, 1992, after Daniels Insurance had sent a certificate of insurance to Amoco evidencing coverage, Hydroblast and Amoco executed the Master Contract.
 

 In the case at bar, the only evidence before the Court of any agreement between Hydroblast and Daniels Insurance, express or implied, is the insurance contract, which specifically excluded pollution coverage. The summary judgment evidence reveals, and Hydroblast does not dispute, that Daniels Insurance, through its employee John Arnold, explained that the policies did not provide pollution coverage. I? is also undisputed that when the policies were first sold to Hydroblast, Arnold discussed the benefits and costs of obtaining pollution coverage. The Court finds nothing in the Master Contract requiring pollution coverage and can find no evidence which indicates that anyone from Hydroblast or Amoco communicated to Daniels Insurance that the Master Contract required such coverage. There is also no evidence that Daniels Insurance knew or should have known that Hydroblast wanted or was required to obtain pollution coverage under the Master Contract. Hydroblast, completely aware of what it was buying, had every'opportunity to either refuse the policy containing the pollution exclusion or purchase pollution coverage. Hydroblast, presumably satisfied with the coverage it had procured, did neither.
 

 The Master Contract also gave Amoco the right to approve the form of the insurance contract that Hydroblast obtained from Daniels Insurance.. After receiving the certificate of' insurance, Amoco approved the Master Contract. Therefore, with the pollution-exclusion clause in the insurance contract intact, Amoco could obtain no more protection from Daniels Insurance than Hydroblast had. It follows then that under the assignment of claims it received from Hydroblast, Amoco cannot maintain an action for breach of an express or implied agreement against Daniels Insurance and Arnold.
 

 In its Response, Hydroblast conclusorily states that Daniels Insurance and Arnold’s Motion for Summary Judgment should be denied because there are issues of fact with respect to whether Daniels .Insurance and Arnold breached their express or implied agreement. Hydroblast offers no summary judgment evidence to support its contention. Instead, Hydroblast simply argues that the Motion should be denied because there is no language in Paragraphs 10 and 11 of the Master Contract excepting indemnity for claims of injuries to employees or other persons resulting from chemicals or pollution. Hydroblast also states that nothing in the Master Contract provides or implies that Hydroblast could comply with the indemnity and insurance provisions by obtaining policies with pollution exclusions. Hydroblast’s argument is unpersuasive and self-defeating. Although seeking entirely different results, Hydroblast and Daniels Insurance essentially argue the same point: there is nothing in the Master Contract concerning pollution coverage. The Court will not supply terms that do not exist and will not find an agreement to supply pollution coverage where it is clear that there is no such agreement. Simply stated, Hydroblast received what it paid for. Hydroblast, not Daniels Insurance or Arnold, is the party that promised to procure insurance and to indemnify Amoco, and the Court will not blur the lines between obligations in the Master Contract and the insurance contract.
 
 [10]
 

 Assuming
 
 arguendo
 
 that an agreement between Hydroblast and Daniels Insurance to procure the insurance required by
 
 *735
 
 Amoco under the Master Contract existed, the Court is satisfied that Daniels Insurance met those requirements. Daniels Insurance and Arnold’s Motion for Summary Judgment as to Hydroblast’s breach-of-agreement claim is therefore GRANTED. Hydroblast’s breaeh-of-agreement claim against Daniels Insurance and Arnold is therefore DISMISSED.
 

 2. DTPA and Insurance Code Claims
 

 In their Motion for Summary Judgment, Daniels Insurance and Arnold contend that Hydroblast’s DTPA and Insurance Code claims should be dismissed because all dealings related to the policies in question took place in New Mexico, thereby rendering the DTPA and the Texas Insurance Code inapplicable to this case. The Court agrees.
 

 Hydroblast alleges that Daniels Insurance and Arnold violated § 17.46(b)(12) of the DTPA, which provides:
 

 (b) ... [T]he term “false, misleading, or deceptive acts or practices” includes, but is not limited to, the following acts:
 

 (12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law____
 

 Tex.Bus. & Comm.Code Ann. § 17.46(b)(12) (Vernon’s Supp.2000). Hydroblast seeks damages under § 17.50 of the DTPA.
 

 Hydroblast also asserts that Daniels Insurance and Arnold violated Article 21.21 § 16 of the Texas Insurance Code, which provides:
 

 (a) Any person who has sustained actual damages caused by another’s engaging in an act or practice declared in Section 4 of this Article to be unfair methods of competition or unfair or deceptive acts or practices in the business of insurance or any practice specifically enumerated in a subdivision of Section 17.46(b), Business & Commerce Code, as an unlawful deceptive trade practice may maintain an action against the person or persons engaging in such practices.
 

 Tex.Ins.Code Ann. art 21.21 § 16 (Vernon’s Supp.2000).
 

 In a diversity action, federal courts must apply the choice-of-law rules of the state in which it sits.
 
 De Aguilar v. Boeing Co.,
 
 47 F.3d 1404, 1413 (5th Cir. 1995) (citing
 
 Klaxon v. Stentor Elec. Mfg. Co.,
 
 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). The Texas Supreme Court has set forth the principle governing choice-of-law determinations: “LI]n all choice of law cases, except those contract cases in which the parties have agreed to a valid choice of law clause, the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue.”
 
 De Aguilar,
 
 47 F.3d at 1413 (quoting
 
 Duncan v. Cessna Aircraft Co.,
 
 665 S.W.2d 414, 421 (Tex. 1984);
 
 DeSantis v. Wackenhut Corp.,
 
 793 S.W.2d 670, 679 (Tex.1990)). The
 
 Duncan
 
 court described the most significant relationship methodology as identical to the approach set forth in §§ 6 and 145 of the Restatement (Second) of the Conflict of Laws.
 
 Duncan,
 
 665 S.W.2d at 420-21. Section 6 of the Restatement (Second) states the general principles of the most significant relationship analysis as follows:
 

 (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
 

 (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:
 

 (a) the needs of the interstate and international systems;
 

 (b) the relevant policies of the forum;
 

 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;
 

 (d) the protection of the justified expectations;
 

 (e) the basic policies underlying the particular field of law;
 

 
 *736
 
 (f) certainty, predictability and uniformity of result, and
 

 (g) ease in the determination and application of the law to be applied. .
 

 Restatement (Second) of Conflict of Laws § 6 (1971). Section 145 lists the factual matters that a Texas court will consider when applying § 6:
 

 (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
 

 (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
 

 (a) the place where the injury occurred;
 

 (b) the place where the conduct causing the injury occurred;
 

 (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and
 

 (d) the place where the relationship, if any, between the parties is centered.
 

 Restatement (Second) of Conflict of Laws § 145 (1971).
 

 Under the
 
 Duncan
 
 standard, the Court must consider the contacts each jurisdiction had with the insurance contract which is the subject matter of Hydroblast’s DTPA and Insurance Code claims. When examining the contact that a jurisdiction has with a transaction, a number of factors may be considered: the place of contracting; the place of negotiation of the contract; the place of performance of the contract; and the domicile or residence of the parties to the transaction.
 
 McClure v. Duggan,
 
 674 F.Supp. 211, 215 (N.D.Tex. 1987) (citing Restatement (Second) of Conflict of Laws § 188 (1971)).
 

 In this case, several factors mitigate strongly in favor of the application of New Mexico law to Hydroblast’s claims. Hydroblast is a New Mexico corporation. Daniels Insurance is a New Mexico corporation, and its agent, John Arnold, is a resident of New Mexico. More importantly, however, every operative fact related to the formation of the insurance contract between Hydroblast and Daniels Insurance, through Arnold, occurred outside the state of Texas.
 
 [11]
 
 It is undisputed that the entire insurance purchase transaction took place in Hobbs, New Mexico. Negotiations for the purchase of the insurance policies took place in New Mexico, and any alleged agreements, whether express or implied, took place in New Mexico. The Court also notes that the insurance policies, which contain no choice-of-law clause, were executed in New Mexico. It necessarily follows that any false, misleading, or deceptive acts committed during the formation of the insurance contract occurred in New Mexico. The state in which a defendant-insurance agency is located has a significant interest in determining the liability of in-state insurance agencies and, accordingly, controlling the conduct of those agencies.
 
 See Continental Oil Co. v. General Am. Transp. Corp.,
 
 409 F.Supp. 288 (S.D.Tex.1976). Thus, the Court is satisfied that New Mexico has the most significant relationship to the merits of Hydroblast’s claims and that the law of New Mexico must therefore control. Stated conversely, the law of Texas does not apply to Hydroblast’s claims.
 

 Furthermore, there is no evidence before the Court of false, misleading, or deceptive acts on behalf of Daniels Insurance or Arnold. There is no evidence that anyone misrepresented that the insurance contract conferred rights, remedies, or obligations that it did not have. There is also nothing before the Court which would suggest that Hydroblast was fraudulently
 
 *737
 
 induced into purchasing the insurance policies. Hydroblast’s only potentially viable claim, already being dismissed by the Court, was for breach of an express or implied agreement. A mere breach of contract, without more, does not constitute a false, misleading, or deceptive action.
 
 Ashford Dev. Inc., v. USLife Real Estate Serv. Corp.,
 
 661 S.W.2d 933 (Tex.1983).
 

 Accordingly, it is ordered that New Mexico law govern any conflicts of law with regard to the substantive issues in Hydroblast’s claims against Daniels Insurance and Arnold. Since New Mexico law is controlling and there is no evidence of false, misleading, or deceptive acts before the Court, Daniels Insurance and Arnold’s Motion for Summary Judgment as to Hy-droblast’s DTPA and Insurance Code claims is GRANTED. Hydroblast’s DTPA and Insurance Code claims against Daniels Insurance and Arnold are therefore DISMISSED.
 

 IV. Conclusion
 

 For the reasons outlined above, the Court finds that P’FIC has neither a duty to defend nor a duty to indemnify Amoco or Hydroblast for any judgment, settlement, or costs in the Ybarra-Bounds litigation. Hydroblast’s Motion for Partial Summary Judgment and application for a declaratory judgment is DENIED. FFIC’s Cross-Motion for Summary Judgment and application for a declaratory judgment is GRANTED.
 

 Furthermore, for the reasons outlined above, Daniels Insurance and Arnold’s Motion for Summary Judgment as to Hydrob-last’s brcach-of-agreement claim, DTPA claim, and Texas Insurance Code claim is GRANTED. Hydroblast’s claims against Daniels Insurance and John Arnold are therefore DISMISSED.
 

 In its discretion, the Court is of the opinion that no attorney’s fees shall be awarded.
 

 SO ORDERED.
 

 All relief not expressly granted is denied.
 

 [1]
 

 . The Court notes that Hydrohlast’s Reply was filed late. However, the Court, in its ■ discretion, has chosen to consider the untimely Reply.
 

 [2]
 

 . Pursuant to a settlement agreement between Amoco and Hydroblast, Hydroblast assigned to Amoco any and all causes of action it may have against FFIC, Daniels Insurance, and John Arnold.
 

 [3]
 

 . Selexol is the trade name for Dimelhoxy Polyethylene Glycol. According to its Material Data Safety Sheet, Selexol is a strong oxidizer which can cause defatting of tissue, vomiting, dizziness, and weakness.
 

 [4]
 

 . The New Mexico Federal District Court entered a judgment in the Ybarra-Bounds suit, which is currently on appeal.
 

 [5]
 

 . FFIC issued two policies to Hydroblast, a commercial package policy, which included a comprehensive general liability policy, and a commercial excess and umbrella policy.
 

 [6]
 

 .
 
 FFIC adds that if Hydroblast’s contention is that Daniels Insurance and/or John Arnold negligently failed to include Amoco on the FFIC policies, then any possible relief would be against Daniels Insurance and/or John Arnold, not against FFIC. Hydroblast does not contest that Amoco is not specifically named as an additional insured in the policies at issue. The fact that Amoco is not named as an additional insured under the policies is the basis of Hydroblast’s claims against Daniels Insurance and John Arnold.
 

 [7]
 

 . The pollution exclusion in
 
 C.A. Turner Construction
 
 excluded "liability for any bodily and/or personal injury ... directly or indirectly caused by or arising out of seepage into or onto and/or pollution and/or contamination of air, land, water and/or any other property and/or any person....”
 
 C.A. Turner Construction,
 
 112 F.3d at 188.
 

 [8]
 

 . The Court does not address whether Amoco was an additional insured under the FFIC policies, either expressly or under an insured contract provision, because even if Amoco was named as an additional insured, the pollution exclusion would apply to defeat coverage.
 

 [9]
 

 . Paragraphs 10 and 11 of the Master Contract provide in part:
 

 10. ... Contractor [Hydroblast] agrees to insure this assumption of liability. The liability assumed by Contractor pursuant to this clause shall be limited to the amounts carried by Contractor’s current liability insurance, but in no event shall it be less than the minimum limits set out in Paragraph 11(b) below.
 

 11. As to all operations provided for herein, Contractor shall secure and maintain during the term of this agreement the following insurance:
 

 ía) Workmen’s Compensation Insurance which shall fully comply with the requirements of state laws as well as federal laws, if applicable.
 

 (b) Comprehensive General Liability Insurance, including Contractual Liability coverage, with minimum limits of $100,000 each person and S300,000 each occurrence for Bodily Injury and $100,000 each occurrence for Property Damage.
 

 (c) Automobile Liability Insurance covering owned, hired, and non-owned vehicles used by Contractor....
 

 If requested by Amoco, Contractor- shall furnish Amoco insurance certificates to evidence the insurance required herein. Maintaining the prescribed insurance shall not relieve Contractor of any other obligation under this Agreement.
 

 [10]
 

 . Depending on the terms of the settlement agreement between Amoco and Hydroblast, Amoco may still seek to enforce its contract rights against Hydroblast. The Court does not imply in any way that Hydroblast is liable to Amoco under the circumstances presented. The Court does not reach that issue here.
 

 [11]
 

 . The DTPA requires that the "trade or commerce” in question "directly or indirectly affect[ ] the people of this state.” Tex.Bus. & Comm.Code Ann. § 17.45(6) (Vernon's Supp. 2000).