UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 06-20335

_____

UNITED NATIONAL INSURANCE COMPANY,

Plaintiff-Appellee,

versus

HYDRO TANK, INC., ET AL.,

Defendants,

MOTIVA ENTERPRISES, L.L.C.,

Defendant-Appellant.

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 22, 2008

Charles R. Fulbruge, III
Clerk

---

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division
No. 4:04-CV-02924

---

ON PETITION FOR REHEARING
(Opinion 8/15/07, 5th Cir. 497 F.3d 445)

Before JONES, Chief Judge, and BENAVIDES and STEWART, Circuit Judges.

The Court, having considered the Petition for Rehearing filed by Motiva Enterprises, L.L.C. in this case, amends our opinion found at 497 F.3d 445, as follows:

Subsections 1 and 2 of Part II.A. of the opinion are superseded by the following, and subsection 3 is renumbered as "2":

### 1. Sufficiency of the Pleadings

The Duriso Plaintiffs alleged they "were caused to sustain serious injuries and damages while working in a tank when they were exposed to toxic levels of hydrogen sulfide and/or other chemicals and vapors." As a result,

they "became overcome by chemicals and toxins owned by [Motiva]...causing brain injury and damage." Motiva argues that use of the phrase "and/or" creates two injury scenarios: one in which the workers were injured by hydrogen sulfide gas, a pollutant,[1] and one in which they were injured by "other chemicals and vapors" that are not necessarily pollutants. Under the second scenario, Motiva asserts, the workers have not alleged injury by a pollutant. For purposes of construing the duty to defend, this court must interpret the pleadings liberally. <u>Nat'l Union Fire Ins. Co. of Pittsburgh v. Merchs. Fast Motor Lines, Inc.</u>, 939 S.W.2d 139, 141 (Tex. 1997). But our duty to construe the pleadings liberally does not require us to adopt unreasonable interpretations of plain language, ignore ordinary usage, or set aside the basic tools of construction.

If the phrase "and/or" is conjunctive, Motiva's interpretation contradicts the policy's language. The relevant clause states that coverage will be denied so long as "'bodily injury'...which would not have occurred <u>in whole or in part</u> but for the...alleged...release...of 'pollutants.'" Thus, if a claim alleges that injury arose at least in part from a pollutant, coverage is

---

[1]    Motiva does not dispute that hydrogen sulfide is <u>per se</u> a pollutant within the meaning of the policy.

2

denied.  See, e.g., Amoco Prod. Co. v. Hydroblast Corp., 90 F. Supp. 2d 727, 732-33 (N.D. Tex. 1999) (allegation of pollutant-related injury sufficient to trigger pollution exclusion clause); Bituminous Cas. Corp. v. Kenworthy Oil Co., 912 F. Supp. 238, 241 (W.D. Tex. 1996) (same).

But even if "and/or" references a disjunctive phrase and thereby states two possible causes of the workers' fainting, either through their exposure to hydrogen sulfide gas or "other chemicals & vapors", Motiva's argument still fails to allege a covered incident.  Depending largely on dicta from an unpublished Fifth Circuit opinion interpreting a damages clause in a service contract, Motiva argues that the correct interpretation of the Duriso pleading reads the phrase "toxic levels of" as applying only to "hydrogen sulfide," and not to the latter phrase "other chemicals and vapors."  See Vaulting & Cash Servs., Inc. v. Diebold, Inc., 1999 WL 1068257, at *2 (5th Cir., Oct. 22, 1999)(unpublished).  The Vaulting court, however, was construing contractual language that is syntactically and semantically dissimilar from the operative language of

3

the Duriso pleading.[2]  Moreover, the panel explicitly stated that "grammatical parsing" is only part of the interpretive process, and the "reasonableness of the interpretation advanced by each party" also plays a significant role.  Id.

If anything, the Vaulting decision supports United National's position.  The logical interpretation of the pleadings is that the phrase "toxic levels of" modifies both "hydrogen sulfide" and "other chemicals and vapors," particularly in light of the fact that the Duriso Plaintiffs only a few sentences later allege brain injury from "chemicals and toxins."  Moreover, when general terms like "chemicals" and "vapors" follow specific terms like "hydrogen sulfide," there is a presumption that the general terms are to be construed to belong to the same class or category as the more specific term.  See, e.g., In Re Biloxi Casino Belle Inc., 368 F.3d 491, 499 & n.8 (5th Cir. 2004)(discussing, in an insurance context, the ejusdem generis[3] canon).  Accordingly, the phrase "toxic levels of hydrogen sulfide and/or other chemicals and vapors" suggests that injury

---

[2]    The Vaulting court determined that, in the phrase "in no event shall Diebold be liable to Subcontractor for indirect, incidental, consequential or similar damages, lost profits, [sic] lost business opportunities," the adjectival series "indirect, incidental, consequential, or similar" modified only "damages" and not the subsequent nouns.  1999 WL 1068257, at *2.

[3]    "Of the same kind."

4

resulted from (1) toxic levels of hydrogen sulfide; (2) toxic levels of other chemicals or vapors; or (3) a combination of both. In any of these situations, the workers were exposed to pollutants according to the policy exclusion.

Next, Motiva argues that a plausible reading of the complaint suggests that the Duriso Plaintiffs were injured not by hydrogen sulfide gas, but by the sludge itself, which Motiva contends is not a pollutant because it was properly stored in the mix tank. We need not, however, determine the difficult issue whether toxic sludge stored in this fashion is a pollutant,[4] because this argument cannot be squared with the plaintiffs' pleadings. Motiva claims that since the workers do not allege the particular mechanism of their exposure to hydrogen sulfide, it is possible that they were injured by skin-to-sludge contact, rather than by inhalation of a gas. If the workers were overcome, for example by heatstroke or a non-pollutant chemical, and subsequently fell into the properly stored toxic sludge only then to be injured by contact with hydrogen sulfide, they could

---

[4] But see Certain Underwriters at Lloyd's London v. C.A. Turner Construction Co., 112 F.3d 184, 188 (5th Cir. 1997) (pollution exclusions are not limited "to only those discharges causing environmental harm"); Hamm v. Allstate Ins. Co., 286 F. Supp. 2d 790, 794-95 & n.2 (N.D. Tex. 2003) (pollution exclusion barred insurer's duty to defend when injury resulted from indoor accumulation of toluene fumes during an office renovation); Zaiontz v. Trinity Universal Ins. Co., 87 S.W.3d 565, 571-72 (Tex. App. 2002) (injury caused by "odor eliminator" chemical that was confined to its proper area of application triggered pollution exclusion).

5

not allege injury by a pollutant as defined in the policy.

Contrary to this theory, the plaintiffs allege they were "overcome" by "chemicals and toxins" and were "caused to fall" into the sludge. The toxic exposure caused them to collapse, and they may then have suffered further toxic exposure. Under no liberal construction of the pleadings can this sequence of events be read to say that the toxic exposure occurred only _after_ they were "overcome" by heat or a benign chemical.

Except for the above modification, the opinion and result are otherwise unaltered.

Petition for Rehearing DENIED.