# United States Court of Appeals
## For the First Circuit

Nos. 08-1602, 08-1603

INSITUFORM TECHNOLOGIES, INC,

Plaintiff, Appellee/Cross-Appellant,

v.

AMERICAN HOME ASSURANCE COMPANY,

Defendant, Appellant/Cross-Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Boudin, John R. Gibson,[*] and Howard,
Circuit Judges.

William T. Corbett with whom Mark D. Sheridan, Laura A. Brady, Jeffrey M. Beyer, Drinker Biddle & Reath LLP, Gregory P. Deschenes, Kurt M. Mullen and Nixon Peabody LLP were on brief for defendant, appellant/cross-appellee.

Charles L. Philbrick with whom Sarah E. Pace, Stanley A. Martin and Holland & Knight LLP were on brief for plaintiff, appellee, cross-appellant.

May 22, 2009

---

[*]Of the Eighth Circuit, sitting by designation.

**BOUDIN**, <u>Circuit Judge</u>.  This appeal stems from a dispute between Insituform Technologies, Inc. ("Insituform"), a Missouri-based contractor, and American Home Assurance Company ("American Home"), an insurer that issued an "excess umbrella" policy to Insituform.  The dispute centers on the reading of the policy in relation to an underlying primary coverage policy issued by another insurer.  The background events are easily recounted.

Insituform entered into a subcontract with D'Alessandro Corporation to rehabilitate roughly 5,400 feet of an East Boston sewer owned by the Massachusetts Water Resources Authority ("MWRA") using cured-in-place pipe technology.  The project called for installing a tube within the existing MWRA pipe and heating resins to cure the tube; this is said to be less costly than replacing the existing pipe.  Insituform performed the installation between August and September 2003.

The tube had fins and wrinkles, and Insituform trimmed the fins at MWRA's request.  There was leakage from both the fins that had been trimmed and elsewhere.  Ultimately MWRA told Insituform that the work did not meet contract specifications and had to be repaired or replaced.  On what was originally a $1 million subcontract, Insituform incurred expenses of over $7 million in attempted repair and, when its repair efforts were unsuccessful, replacing the pipe.

Insituform filed claims with both Liberty Mutual (its primary insurer) and American Home, seeking coverage of the repair and replacement costs. Liberty Mutual had issued Insituform a commercial general liability ("CGL") policy for the relevant time period; it determined that the MWRA repair work was covered under its policy and paid its applicable policy limit, $1 million less a $250,000 deductible. American Home denied coverage, citing policy exclusions for Insituform's work and product.

CGL policies are primarily directed at liability sought to be imposed by a third party and often exclude coverage for mistakes in the insured's own product or work. See Am. Home Assurance Co. v. AGM Marine Contractors, Inc., 467 F.3d 810, 812-13 (1st Cir. 2006). The Liberty Mutual policy had a number of such exclusions (e.g., for "your product" and "your work" and for recall or replacement of "your product" or "your work"). But the policy contained--among many separately paginated amendments (called endorsements)--one titled "contractor rework coverage amendment" which overrode those exclusions to provide coverage in this case (or so Liberty Mutual concluded).[1]

---

[1]The amendment states in relevant part: "We will pay those sums which you become legally obligated to pay for the required removal or repair of 'your product' or 'your work' including concrete, cement, sand or aggregate, concrete blocks, concrete products or other products manufactured, sold, handled or distributed by or on behalf of the Insured which are defective, subject to the limits of liability and deductible and the provisions specified below."

American Home's policy is also of the CGL variety, although seemingly framed primarily to provide second-layer coverage for damages exceeding the maximum allowed by underlying primary policies. In many respects the coverage and exclusions of the American Home policy echoed those of the Liberty Mutual policy. But the American Home policy did not include a "contractor rework coverage amendment" or other amendments comparable to the one included in the Liberty Mutual policy.

After American Home denied coverage, Insituform filed suit in the Massachusetts district court seeking damages for breach of contract (count I), a declaratory judgment that the policy provides coverage (count II) and attorney's fees under Missouri law (count III), Mo. Rev. Stat. § 375.420 (2002). On cross-motions for summary judgment, the district court held American Home liable for the cost of repairing and replacing Insituform's work but later denied consequential damages due to inadequate discovery disclosures. Insituform Techs., Inc. v. Am. Home Assurance Co., 364 F. Supp. 2d 3 (D. Mass. 2005).

The parties then stipulated to the amount of compensatory damages ($6,054,899.68), which the district court awarded together with prejudgment interest ($1,628,917.36). On this appeal, American Home challenges the district court's grant of summary judgment as to coverage as well as its calculation of prejudgment interest. Insituform cross-appeals as to the amount of prejudgment

interest, and it claims that it should have been permitted to present evidence of consequential damages.

We review de novo the district court's grant of summary judgment. Fireman's Fund Ins. Co. v. Special Olympics Int'l, Inc., 346 F.3d 259, 261 (1st Cir. 2003). The parties agree that relevant law in Missouri and Massachusetts is similar, and we accept this view as reasonable. Commonwealth Land Title Ins. Co. v. IDC Props., Inc., 547 F.3d 15, 22 (1st Cir. 2008). The insured must show coverage under the policy; the insurer, the applicability of any exclusion on which it relies. E.g., Highlands Ins. Co. v. Aerovox Inc., 676 N.E.2d 801, 804 (Mass. 1997).

As the case has been framed, American Home seems to concede that at least some portion of the MWRA repair and rework cost constitutes "property damage" falling within the broad initial coverage terms of its policy unless otherwise excluded; and Insituform appears to concede that the "your product," "your work" and related exclusions in the American Home policy would in turn defeat the property damage coverage--save for a separate amendment in the American Home policy invoked by Insituform.

That separate amendment to the American Home policy, the subject of most of the controversy in this case, is titled "contractor's endorsement." The endorsement is a single page that reads as follows:

---

## CONTRACTOR'S ENDORSEMENT
### Excluded Hazards

This insurance does not apply to:

1. **Property Damage** to any property or equipment leased by the **Insured**;

2. **Property Damage** to property being installed, erected or worked upon by the **Insured** or by any agents or subcontractors of the **Insured**;

3. **Bodily Injury** or **Property Damage** arising out of any project insured under a "wrap-up" or any similar rating plan; or

4. **Bodily Injury** or **Property Damage** arising out of any professional services performed by or on behalf of the **Insured**, including but not limited to the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications, and any supervisory, inspection or engineering services.

### Following Form Hazards

It is further agreed that this insurance does not apply to:

1. **Property Damage** arising out of:

   a. Blasting or explosion other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment;

   b. The collapse of or structural injury to any building or structure due to:

      1) the grading of land, paving, excavating, drilling, burrowing, filling, back-filling, tunneling, pile driving, coffer-dam or caisson work,

      2) the moving, shoring, underpinning, raising, or demolition of any building or structure, or the removal or rebuilding of any structural support thereof, or

-6-

     **c.**     Damage to or destruction of wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, burrowing, filling, back-filling or pile driving; or

**2.**     Any liability assumed by the **Insured** under any contract or agreement.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

**1.**     This exclusion shall not apply; and

**2.**     The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

The district court held that the endorsement is ambiguous as to whether the "However" provision governs the entire endorsement or merely the portion of the endorsement that follows the subheading titled "Following Form Hazards." Arguably the endorsement is ambiguous on this point and so should be read in favor of the insured. Hakim v. Mass. Insurers' Insolvency Fund, 675 N.E.2d 1161, 1165 (Mass. 1997). If so, none of the exclusions in the endorsement would apply if insurance for the listed harms were provided in the underlying Liberty Mutual policy.

But what the district court said next--which we do not accept--is that wherever Liberty Mutual provided coverage under its own policy for hazards described in the endorsement, American Home

-7-

became liable for excess damages under the American Home policy (up to its own policy limit) for the same hazards. The district court's reasoning is nicely summed up in the following statement by the district judge:

> Accordingly, as proposed by Insituform, I construe the However clause in Endorsement No. 4 [the American Home contractor's endorsement] to modify both the Excluded Hazards and the Following Form Hazards sections of the endorsement. Consequently, those hazards "follow form" (as that term is used in the parties' submissions) to the primary insurance policy issued by Liberty Mutual Insurance Company to Insituform, as it is uncontroverted that the Liberty policy is "a policy listed in the Schedule of Underlying Insurance."[2]

Insituform, 364 F. Supp. 2d at 6.

The "accordingly" (as already noted) may well be sound but we think the "consequently" is not. The district court's "consequently" and the "follow form" references rest on a half-buried premise that is contrary to the language of the American

---

[2]In granting summary judgment as to liability, the district judge repeated: "Endorsement No. 4 follows form . . . to the extent that the Liberty Mutual policy provides coverage for the specific types of hazards explicitly listed in the Endorsement--that is, a claim must fall within one of the eight enumerated hazards, matched to a similar provision in the primary policy, in order to be covered by the American Home policy. The crucial inquiries, then, are whether the MWRA Claim fits within any of the hazards listed in Endorsement No. 4, and whether Liberty Mutual's Rework Coverage Amendment provides coverage for that particular hazard." Insituform, 2007 WL 2900469, at *3.

Home policy and its contractor's endorsement. Why the premise is mistaken is argued by American Home only late in its brief on appeal and after other complex arguments, which may also explain why the premise was not focused upon by the district court; but the argument against the premise was fully preserved in the district court and is decisive in favor of American Home.

The phrase "follow form" refers to the practice, common in excess policies, of having the second-layer coverage follow substantively the primary layer provided by the main insurer, 2 Ostrager & Newman, Handbook on Insurance Coverage Disputes, § 13.01 (11th ed. 2002), and it would be easy to write a short excess policy that adopted all of the terms of the primary (except that coverage cuts in after the primary layer is exhausted and cuts off at the excess policy limit). But "follow form" is a loose term, and the American Home policy does not by any means "follow [the] form" of the Liberty Mutual policy in all respects.[3]

Rather, the American Home policy--although it provides much secondary coverage in relation to Liberty Mutual--has a lengthy set of coverage provisions and exclusions of its own. Many of the American Home provisions, for and against coverage, mirror

---

[3]Various phrases are used to describe second-layer policies, among them "umbrella," "excess" and "follow form," but it is a mistake to assume precision in such terminology; and even where a policy is described as "follow form," it does not necessarily provide coverage that is substantively identical to the underlying one. Ostrager & Newman, supra, § 13.01.

those of the Liberty Mutual policy. But--and this is critical here--the American Home policy contains the Liberty Mutual exclusions for "your product" and "your work" and related liabilities, but it does not contain the Liberty Mutual "contractor rework coverage amendment" (note 1, above) that overrides those exclusions as to Liberty Mutual.

The district court read the However clause in the American Home contractors endorsement as if it made American Home liable for any of the hazards listed in the endorsement wherever Liberty Mutual would be liable for the same hazard. Thus, on the district court's reading, because hazard 2 in the endorsement relates to property damage and Liberty Mutual's policy covers such damage under the "contractor rework coverage amendment," American Home is liable to provide secondary coverage for the rework.

But the American Home contractors endorsement does not create new liability for American Home inconsistent with its other basic coverage and exclusion provisions. On the contrary, the American Home endorsement at issue (in contrast to the Liberty Mutual endorsement which expands liability) negates liability for the named hazards over and above existing exclusions elsewhere. The only role of the However clause is to limit these new negations wherever Liberty Mutual would provide coverage.

American Home need not and arguably cannot rely on the endorsement to its policy to defeat Insituform's claim: it can and

clearly does rely on the "your product" and "your work" exclusions of its own policy which, unlike the Liberty Mutual policy, are not overridden by the contractor's rework coverage amendment to which Liberty Mutual (but not American Home) consented.  Insituform makes no effort to show that the your product and your work exclusions are inapplicable.  Its reliance on the rework amendment--which only applies to "your work" or "your product"--implicitly recognizes that they would apply but for the endorsement.

On point is United National Ins. Co. v. Hydro Tank, Inc., 497 F.3d 445, amended on other grounds by 525 F.3d 400 (5th Cir. 2007), which also dealt with an excess policy's limiting endorsement that itself contained a savings clause akin to the However clause here.[4]  The Fifth Circuit crisply dispatched an insured's claim parallel to that of Insituform, saying (as we do) that the savings clause created an exception to the exclusions in the endorsement but did not override exclusions contained elsewhere in the same policy.  Id. at 452.  The policy language in Hydro Tank was different; the principle is the same.

In an effort to get around this result, Insituform points to other uses of the However clause elsewhere in the American Home

---

[4]The contractors limitation endorsement in the excess policy excluded contractually assumed liability "except insofar as coverage is available to the insured in valid and collectible 'underlying insurance' . . . ."  The underlying insurance did cover the harm; but the court held that the "insofar as" qualifier left intact a separate exclusion in the excess policy for pollution-related harm.

-11-

policy that it says are designed to create new coverage; in particular, it says that endorsement no. 7, which governs employee benefit liability, uses a However clause to create coverage that follows form to a similar endorsement in the underlying Liberty Mutual policy. It says that reading that endorsement as limited by the American Home policy exclusions would make it meaningless.

Even if this other endorsement were taken to cast light on the contractor's endorsement, it does not cast the light that Insituform attributes to it. Insituform is not correct that endorsement no. 7 would be meaningless if limited by American Home policy's other exclusions. Endorsement no. 7 creates limited follow form coverage for negligent <u>administration</u> of such programs; the exclusions, in contrast, defeat coverage for violating obligations imposed by the benefit laws themselves and are not inconsistent with coverage created by endorsement no. 7.

Our discussion renders as beside the point the parties' lengthy discussion as to whether the harm in this case is within or without one or another of the listed hazards in the American Home contractor's endorsement. This would matter here only if the endorsement were read to override independent restrictions elsewhere in the policy. Such a reading is not tenable and American Home is not liable for the rework. This also means that the interest and consequential damages issues are moot.

The judgment of the district court is <u>vacated</u> and the case <u>remanded</u> for dismissal of the complaint.

<u>It is so ordered</u>.